ELIZABETH DONALDSON and THOMAS DONALDSON, Executors of SAMUEL I. DONALDSON, deceased, who was the Administrator, *de bonis non*, of CHRISTOPHER RABORG, deceased, vs. CATHARINE M. RABORG, Administratrix, *d. b. n.*, of CHRISTOPHER RABORG, deceased.

CATHARINE M. RABORG, Administratrix, *d. b. n.*, of CHRISTOPHER RABORG, deceased, vs. ELIZABETH DONALDSON and THOMAS DONALDSON, Executors, &c.

*Testamentary Law—Practice—Administrator—Ancient Accounts—Costs.*

D. as administrator *d. b. n.*, of R., passed his second account on the 25th April, 1837, showing a balance of $4228.76, due the estate of his intestate; he passed no further account, and in 1865 he died. After his death, letters *d. b. n.*, on the estate of R., were granted to C., who filed a petition in the Orphans' Court of Baltimore city against the executors of D., alleging that their testator stood charged with this balance down

to the date of his death, and praying that they be ordered to pay it over to her with interest. To this petition the executors, protesting their testator had duly administered the assets and paid the distributees their shares, and reserving the right to show the fact of such payments thereafter, if their pleas should be held insufficient, pleaded three special pleas, one of which relied on limitations and lapse of time. The Orphans' Court after argument, passed an order directing the executors to pay the balance of $4228.76 without interest, to C. Both parties appealed, the executors relying upon their pleas, and C. insisting that the order should have embraced interest on said sum from the date of the account. On the appeal, the order was affirmed. C. then filed another petition in the Orphans' Court praying that the executors might be " made to render an account of the assets received and the payments made by their testator," under the 11th section of Article 93 of the Code of Pub. Gen'l Laws, and in such account to charge themselves with interest on this sum, to be calculated in such manner as the Court should think just and right. To this petition, the executors filed an answer, tendering an account and insisting that their testator had fully administered the estate, and paid away in due course of administration, this whole balance, to the parties entitled to receive it. Testimony was taken on both sides and after argument by counsel, the Court passed an order rejecting the account tendered by the executors, and requiring them to state another charging themselves with the balance, $4228.76, and with simple interest thereon from the 25th of April, 1837. From this order both parties appealed. HELD:

That whatever effect, the affirmance of the order of the Orphans' Court, might have had to preclude the executors from setting up, *on their motion*, by further proceedings, the defence of *res adjudicata*, as to the principal appearing to be due by the said account, they are, under the petition of the administratrix, asking the Court to compel them to discharge the duty imposed on them by the 11th section of the 93d Art. of the Code of Pub. Gen'l Laws, entitled, while showing the assets received, to show also the payments and disbursements made by their testator.

An administrator who passes an account showing a balance due the estate of his intestate, is not thereby precluded from claiming an allowance in a subsequent account, for the entire amount paid to distributees, previously to the passage of the first account.

The duty is cast upon the administrator, in the first instance, after payment of debts, to ascertain who the distributees and persons entitled to the estate, are; and if he pay the right parties their proper shares, he is protected whether it be done under the sanction of the Orphans' Court or not, and it makes no difference whether such payments be made before or after the passing of an account showing the balance for distribution.

Donaldson's Ex'rs, vs. Raborg, Adm'rx, d. b. n.

A complainant seeking to investigate ancient accounts, will have his case subjected to severe scrutiny, although he is not to be visited with all the consequences of *laches;* while on the other hand, the defendant's evidence will receive a more indulgent consideration. The time at which a claim is sought to be enforced, and a failure to prosecute it while the parties originally interested were alive, are circumstances calculated to throw suspicion over it, and in a doubtful case would strengthen the defences which might be set up.

Executors who have failed to present at the proper time, their defences to a claim presented by an administratrix, and thereby postponed the adjudication of the matter in controversy, may be required to pay costs, even though said defences are decided, upon appeal, to have been well taken.

CROSS APPEALS from the Orphans' Court of Baltimore City.

The facts in this case, in so far as they are needful to an intelligent understanding of the principles decided, will be found stated with sufficient clearness and fulness in the opinion of the Court.

The cause was argued before BARTOL, C. J., GRASON, MILLER and ALVEY, J.

*Thomas Donaldson* and *Geo. Wm. Brown,* for the executors of Samuel I. Donaldson.

After the case between these same parties, heretofore considered by this Court, had been remanded, Catharine M. Raborg, administratrix *d. b. n.,* of Christopher Raborg acting on the suggestion contained in the opinion, on the 4th of February, 1867, filed a petition in the Orphans' Court calling upon the executors of Samuel I. Donaldson to render an account showing the amount of assets received and the payments made by their decedent, according to the requirements of the 11th section of Art. 93 of the Code of Public General Laws, and to charge themselves with interest on the balance shown by the former account, to be calculated in such manner as the Court should consider just and right. In response to this petition the executors submitted the following account:

o

Third account of Samuel I. Donaldson, adm'r *d. b. n.* of Christopher Raborg, deceased, by Elizabeth Donaldson and Thomas Donaldson, executors of said Samuel I. Donaldson.

These accountants charge the estate of their testator with this amount, being the balance of personal estate appearing due the estate of said Christopher Raborg by the second administration account of said Samuel I. Donaldson, adm'r *d. b. n.*, passed 25th April, 1837,          -          -          -          $4228.76

And they crave allowance for the following sums paid in distribution by the said Samuel I. Donaldson:

This amount paid D. W. B. McClellan, assignee of Catharine Raborg, widow, Samuel Raborg, Franklin Raborg, Catharine M. Raborg and Jacob Wagner and Rachel his wife, and as trustee for Mrs. Eliza McClellan, as per receipt of April 25th, 1832,          -          -          -          -          $1500.00
This amount paid Samuel McClellan, trustee of Eliza McClellan, and children under assignment from Geo. W. Raborg, as by settlement made April 19th, 1837,          -          -          -          422.88
This amount paid D. W. B. McClellan, assignee, &c., or to Samuel McClellan his agent, for said D. W. B. McClellan,          -          -          -          2305.98

                                                             $4228.86

It is clear that the filing of the petition by Catharine M. Raborg, calling on the executors of Mr. Donaldson to render the account required by section 11 of Article 93 of the Code of Public General Laws, did have the effect of opening the whole question of the liability of Donaldson's estate for any part of the balance claimed, principal, as well as interest. This necessarily follows, from the very language, and evident purpose of that section, which is in these words: " The admin-

istrator of a deceased administrator, who shall die before an account of his administration hath been rendered, shall render an account, showing the amount of the assets received, *and the payments made by his decedent, and the account shall, if found by the Court* to be correct, be admitted to record as other administration accounts." And in accordance with this view, this Court, in the opinion delivered on the former appeal, .spoke of this method of proceeding as a "*preliminary* proceeding." If it were not competent for the executors of Samuel I. Donaldson, under the call of this petition, to show "*payments made,*" by their decedent, the proceeding would be a mere mockery and it would be impossible for them to render the account required. It is then perfectly clear, that the steps thus taken by C. M. Raborg, administratrix, *d. b. n.*, for the purpose of obtaining under the present form of proceeding, both principal and interest of whatever balance should appear to have remained undistributed in the hands of Samuel I. Donaldson the former administrator of Christopher Raborg, in requiring an account under section 11 of Article 93, was an abandonment of the benefit, if any, to be derived from the order already passed by the Orphans' Court and affirmed by this Court, for the payment of the principal sum of $4228.76. But with the advantage of this form of proceeding, the administrator *d. b. n.* inevitably took the disadvantage in this case in losing the benefit of the former order, if payments on account of the principal should be shown by the executors of Donaldson.

The account presented by the executors was accompanied by an answer, setting forth the principal facts not only relied on to show particular payments on account of the principal of the alleged balance, but from which it must be inferred, especially after so great a lapse of time that payment in full had been made. Testimony was then taken on both sides, principally documentary in its nature. The effect of all this testimony is to change entirely the aspect from what it appeared to this Court on the first appeal, when presented barely on the

pleas and the records of the Orphans' Court; and it may be confidently asserted, that not only specific payment of a large portion of the principal of the balance of $4228.76 has been shown, but that the array of facts proved, leads irresistibly to the conclusion that the whole of said balance was in fact discharged by payments made by Samuel I. Donaldson to the parties entitled, or by settlements equivalent to payment made with the knowledge and acquiescence of those parties.    In truth, the facts contained in the present record demonstrate, that the settlement, made in April, 1837, between Samuel McClellan and Donaldson, embraced all the liability of said Donaldson, as administrator, *d. b. n.*, of Christopher Raborg, including the balance of $4228.76, appearing due by his second account; that said settlement was known and acquiesced in by David W. B. McClellan, the assignee of the widow and of five out of six of the children of C. Raborg, entitled to distributive shares; that Samuel McClellan was entitled as trustee to the distributive share of the other child of said Raborg, and received that share, and was still largely indebted to Donaldson; that although said David and Samuel lived, the first, seventeen, and the other, twenty-one years after said settlement, neither afterward made any claim on Donaldson; that William W. McClellan, the son of Samuel and Eliza, though of age in 1838, and thoroughly acquainted with the affairs of his said father and constantly furnishing him money and assisting him by his credit, never made any claim against Donaldson during his life; that Catharine M. Raborg, the daughter, and present administratrix, *d. b. n.*, of C. Raborg, was also cognizant of Samuel McClellan's affairs, and also assisted him with money and credit; and that the other living children of Samuel McClellan, Cristopher R., Catharine and Eliza, were of age respectively in 1834, 1836, and 1844, and yet never made any claim against Donaldson, except that Christopher filed a petition in 1859, twenty-five years after he became of age, which he abandoned before the death of Donaldson.    The administratrix *de bonis non* can only repre-

sent these parties, who were for so great a length of time perfectly competent to act for themselves. There can be no pretence that any creditors remained unsatisfied. *Gardner & Hughes, ex'rs., vs. Simmes, adm'r, d. b. n.,* 1 *Gill,* 425; *Lark, et al., vs. Linstead & Heath,* 2 *Md. Rep.,* 420.

The conclusion is irresistible, that all the parties named knew that a final settlement had been made, and that Donaldson was not liable for any part of the balance appearing due by the account of April 25th, 1837.

Even if the facts proved were less convincing, the rule stated in *Stiles, et al., vs. Brown, et al.,* 1 *Gill,* 350, would require the evidence produced on the part of the executors of Donaldson to be received with, the most indulgent consideration; and it is indeed remarkable, after so great a lapse of time, and after the death of those between whom the transactions took place, that such a chain of testimony can be furnished.

To the account offered by the executors of Donaldson, showing that the balance of $4228.76, appearing to be due by his second account, had been discharged; Catharine M. Raborg, administratrix, *d. b. n.,* filed exceptions which it is now proposed to consider in their order.

The 1*st Exception* is: That said Donaldson was bound to render successive accounts at stated periods, in which accounts he ought to have been charged at each settlement with interest on the balance in hands, in augmentation of such balance, but no interest is charged in the account.

The answer to this is evident, *that all such balance was discharged by payments to, or settlements with, the parties entitled to receive it, before any interest on the same could accrue.* If the principal is not due, there can be no interest claimed.

But even if there be a liability for the principal, because of the fact that proper releases were not executed, and on the supposition, that there is insufficient proof of the authority of Samuel McClellan to act for his brother, David W. B. McClellan; yet the circumstances of the case are not such,

as would justify a charge of interest; and the burden imposed upon the opposite party, by the opinion of this Court in the first appeal in this case, of producing "*proper proofs,*" in order to charge Donaldson's estate with interest, has not been complied with. *Gwynn vs. Dorsey, adm'r of Howard,* 4 G. & J., 460; *Mickle, adm'r of Campbell vs. Cross, adm'r of Neilson,* 10 Md. Rep., 352; *Saltmarsh vs. Barrett,* 8 Jurist, N. S., 737; 2 *Williams on Ex'rs,* 1674-5.

The 2d *Exception* is: Because all credits claimed for payments to distributees are based on alleged payments *anterior* to the date of passing the second account, and are in direct conflict with the acknowledgment in said account.

This is the assertion of an extraordinary principle, which would change the whole system of practice in the administration of estates, and would produce as great inconvenience in the future, as injustice in this and all like cases in the past. In order to ascertain the surplus for distribution among the several parties entitled, it is necessary to deduct all debts, costs, commissions, &c., from the assets received by the administrator; and therefore, it is usual, first to pass an account excluding payments to distributees, whatever payments to them have been made, and, afterwards, to file releases for the balance appearing to be due the estate. This is sometimes done by a formal account in distribution, with releases, and sometimes by releases alone. The affidavit made by the administrator to any account offered by him, is, that he has paid, or secured the payment of all sums for which he craves allowance, not that he has craved allowance for all sums that he has paid.

Partial payments in advance to distributees are often made, the credit for which is not claimed until a final account is passed, and much confusion would arise from adopting any other course.

The administrator is bound himself to ascertain who are the distributees, and to pay them. *Conner vs. Ogle,* 4 Md., Ch. Dec., 450, approved in *Scott vs. Fox,* 14 Md. Rep., 388.

. But in no case is an administrator's account conclusive, and if the method pursued were not the most correct, the omission to claim proper credit could be rectified in a subsequent account. The proof showing that payments were made before the passing of the second account, for which credits were not claimed therein, those credits can at any subsequent time be allowed. Indeed, one of the purposes of the proceeding prescribed by the 11th sec. of Art. 93 of the Code of Pub. Gen'l Laws, is to give the executors of the deceased administrator an opportunity of showing all such payments, and the account offered under it must be the same in all respects as if said administrator had lived to make it himself.

The 3d *Exception* is: That it has been conclusively adjudicated by decree of the Orphans' Court, affirmed by the Court of Appeals, that $4228.76 of *principal* money was due by Donaldson, as administrator, *d. b. n.*, of Raborg, and that Donaldson's executors cannot go behind that decree.

In addition to what has been previously said in regard to the principle involved in this exception, it may be proper to say further, that it was impossible for the administratrix of Raborg to proceed under the 11th sec. of Art. 93, without abandoning the benefit of the order in the former proceeding; and if it were not so abandoned, no *interest* can be recovered, because she proceeded under the 72d section, before calling for an account under section 11.

We would also call attention to a misapprehension of the meaning of this Court, shown in the petition filed in the present case by the administratrix of Raborg. That petition says that "the Court of Appeals, upon consideration of the said cross-appeals, affirmed the said order, and determined that under the 72d sec. of the 93d Art., of the Code, the Orphans' Court has no power to award interest; but that were the executors of the said deceased administrator required to render a final administration account in manner provided by the 11th section of said article, they would on proper proof, be chargeable with interest upon the balance shown as afore-

said, *by the account of 25th April,* 1837, and such account being stated, might be made to pay over the whole amount shown to be due, including as well interest as principal."

What the Court of Appeals really said, was: "If the petitioner had instituted a *preliminary* proceeding under sec. 11, Art. 93, of the Code, to compel the executors of Mr. Donaldson to render a further account of his administration, or had inserted such a prayer in the present petition as was done in the case of *Mickle vs. Campbell,* 10 *Md. Rep.,* 352, this question of his liability for interest would have arisen, and, *upon proper proofs,* interest might have been made a subject of charge *in such account, and upon the balance thus ascertained,* including principal and interest, the order of Court passed under the 72d section would operate." It is not said, as erroneously stated in the petition, that Donaldsons' executors "would be chargeable with interest upon the balance shown by the account of 25th April, 1837," but that those executors might, under proper proofs, be obliged to charge themselves with interest in the account to be stated under section 11, and upon the balance thus ascertained, principal and interest, the Court could pass an order under the 72d section. The proceeding under the 11th section would be "*preliminary,*" and that, under the 72d section, would afterwards be made, if any balance were due, to enforce the payment of that balance.

The *4th Exception* is: That the executors of Donaldson claim credit for $1500, which the exceptant states never was in fact paid; but that the firm of McClellan & Seckel failed in business, and that their creditors agreed to assign their several claims to D. W. B. McClellan, provided the latter would deposit in the hands of Donaldson, on or before the 1st of May, 1832, the sum of $1500, and the said D. W. B. McClellan, without actually depositing any money in the hands of said Donaldson, gave the receipt of 25th April, 1832, as security to said Donaldson for said amount, and the giving of which receipt was a violation on the part of said D. W. B. McClellan of his duty as assignee and trustee,

and a breach of trust, of which said Donaldson had full and actual notice. The exceptant then calls upon the executors of Donaldson to produce vouchers of payments to the creditors.

In the first place, it is assumed in this exception, without any proof whatever, that no money was actually paid by Donaldson to D. W. B. McClellan, and that none was actually deposited by said McClellan in the hands of Donaldson for the creditors of McClellan & Seckel. But even if this were admitted, the circumstances themselves show what was equivalent to actual payments and actual deposit made.

It must be remembered, that, David W. B. McClellan, as assignee, *absolutely, in his own right,* was entitled to the widow's thirds, and to the distributive shares of Rachel Wagner, Samuel Raborg and Franklin Raborg; and was trustee of two distributive shares, Mrs. McClellan's and C. M. Raborg's. His absolute interest, supposing the balance to be distributed was $4228.76, amounted to $2960.13, and his trust interest to $845.75$\frac{1}{3}$.

It is a strange assumption, that D. W. B. McClellan could not give Donaldson a receipt for $1500 on account of his interest in the personal estate of Raborg, although in advance of distribution, and authorise Donaldson to distribute the sum among any persons designated. Indeed even as to the two shares to which he was entitled as trustee, he could properly receipt for the same, making himself responsible therefor. As trustee, he was entitled to receive those shares; and when the time for distribution came, he could have obliged the administrator to pay them to him. There is no pretence, that D. W. B. McClellan was insolvent; and, indeed, the evidence shows him to have been possessed of a large property. Besides, for this $1500, left with Donaldson, supposing it the same for which McClellan gave the receipt to Donaldson, McClellan received an assignment of the claims of almost all the creditors of the firm of McClellan & Seckel.

By the acknowledgment of Donaldson, he became responsible to those creditors, and to them alone; they were cognizant

of the fact, and had executed the assignment on that condition. It must be assumed, as we have no doubt was the fact, that the amount was properly distributed by Donaldson; but it is a collateral matter, into which no examination can be here made.

The *5th Exception* is: That the executors of Donaldson claim a credit of $422.88 as paid to Samuel McClellan, as trustee for his wife and children, by the settlement of April 19th, 1837; whereas, no such payment was actually made, and, if brought into that account, it was a violation of trust by Samuel McClellan, of which Donaldson had notice.

To whom else but Samuel McClellan, the trustee, could Donaldson have paid this distributive share, and where accounts were settled between them, why should not that share be charged as a credit to McClellan? If the money had been paid to him, he could have paid the same amount back to Donaldson. If McClellan had then been known to be insolvent, the case might have been different; but he had at the time a large amount of property, not included in his mortgage to Donaldson of April 19th, 1837, as the evidence in this case shows. An additional amount could easily have been included in the mortgage. S. McClellan did not take the benefit of the insolvent laws till May 11th, 1839, and in the answer to the bill of John McClellan, he speaks of the "untoward changes of times," which had so depreciated the value of his property, as to make it insufficient to discharge his debts,—alluding to the financial crisis, which is now a matter of history.

Besides, of the four children of Mrs. Eliza McClellan, who are now living, Christopher R. was 21 years of age in 1834, and William W. in 1838; Catharine was 18 years of age in 1836, and Eliza in 1844. By the terms of the deeds of trust, the distributive shares held in trust for them became vested at the death of their mother—July 25th, 1830—and they had a right to demand the same of the trustees. It must be presumed, after such a lapse of time, either that they received

what was due to them, or that they acquiesced in the settlement made by their father, and permitted him to retain and use the amount. The evidence in this record shows, that Wm. W. McClellan was intimately connected with all the pecuniary concerns of his father, and that he must have known all the facts connected with the settlement made. *Ridenour, et al., vs. Keller,* 2 *Gill,* 134.

The *6th Exception* is: That the executors of Donaldson claim credit for $2305.48, alleged to have been paid to David W. B. McClellan, assignee, &c., or to Samuel McClellan as his agent, for said David; whereas no such payment was made either to David or to Samuel at any time or in any manner.

While the executors of Mr. Donaldson have not been able to furnish a specific voucher for this item of credit, they have no hesitation in affirming that the array of facts proved and disclosed in the record conclusively demonstrate that the settlement made in April, 1837, between Samuel McClellan and Mr. Donaldson embraced not only this item, but that it included all the liability of said Donaldson as administrator, d. b. n., of Christopher Raborg.

The *7th Exception* is: That all the credits claimed by the executors of Donaldson are alleged claims against, or payments for, or settlements with distributees, or assignees of distributees, and not for, or on account of, claims or charges against his intestate; so that, even if said payments and settlements were just and proper, the claims could only be brought forward in a future settlement with the present administratrix, d. b. n., of Christopher Raborg, the said executors claiming by subrogation to the rights of the parties with whom the settlements were made, or to whom said alleged payments were made.

The theory of this exception is directly contrary to the section of the Code under which the petition was filed, (*sec.* 11 *of Art.* 93,) which requires payments by the deceased administrator to be shown in the account to be stated; or rather it

assumes that payments to distributees, or to their assignees, are not payments at all within the meaning of that section. A payment to a distributee, or to his assignee, it is perfectly proper for an administrator to make, when he has funds for distribution, and in any account passed by him such payments would be allowed; they must then be necessarily allowed in the account stated for him by his executor or administrator under the 11th section. Otherwise, in every case where all assets had been paid away, and every distributee had received his full share, but the administrator had died without passing a final account, an administrator, *d. b. n.*, would have to be appointed, to whom the administrator of the deceased administrator must pay over an amount equal to all the distributive shares, (and with interest too, as is here claimed,) only to come back and prove his claim for those distributive shares against the administrator, *d. b. n.*, and, after a year or more, to get back the amount without interest, and less the commissions and other costs of the administration. *Conner vs. Ogle*, 4 *Md. Ch. Dec.*, 450.

*Arthur W. Machen* and *William Schley*, for Catharine M. Raborg, administratrix, *d. b. n.*

The answer of Mr. Donaldson's executors, accompanying the account, contains many allegations, nearly all of which are believed to be entirely irrelevant to the present inquiry. Some of the matters charged, on examination of the evidence, proved to be utterly unfounded; others are inconsistent with the defence set up in the account; while others again evidently have connection with a set of private business transactions between Mr. Donaldson, on his own account, and certain persons who were either not entitled to any distributive shares, or if entitled, were, as to some, if not all of the shares of which they were assignees, only so entitled in a fiduciary character, transactions entirely independent of the administration, and resulting in settlements in which neither the estate nor the shares of the distributees were at all involved.

Donaldson's Ex'rs, *vs.* Raborg, Adm'rx, *d. b. n.*

Out of the mass of materials brought together in their answer, Mr. Donaldson's executors construct an account which attempts to be more specific than that which they offer for passage. In this detailed account they claim to overcome the balance of $4228.76, thus:

| | | |
|---|---|---:|
| Paid April 25th, to D. W. B. McClellan, | - | $1500.00 |
| The note in favor of Latrobe & Krebs, - | - | 1604.21 |
| The note in favor of C. F. Mayer, | - | 610.00 |
| The first note in favor of James Neale, - | - | 550.00 |
| The second note in favor of James Neale, | - | 550.00 |
| | | $4814.21 |

But by evidence produced on the part of the administratrix, *d. b. n.*, all of these credit items are proved to be merely imaginary.

That the estate of Mr. Donaldson is chargeable with the principal sum of $4228.71 is *res adjudicata*. His executors had opportunity at the former hearing to rely upon actual payment; but having elected to rest their defence on other grounds, which they failed to maintain, to allow them afterwards to dispute the question of liability then determined, would be to set up a principle capable of leading to endless litigation.

The former case was heard upon *evidence*, and did not simply involve the legal sufficiency of the pleas. All, therefore, that was properly brought under the judgment of the Court by the petition was adjudicated. The question of interest, according to the decision of the Court of Appeals, was *not* raised by the petition. That, therefore, remained open. The fact of the existence of the principal, as an undistributed balance remaining in the former administrator's hands at his death, *was* in issue, and was conclusively established.

The executors of Donaldson are concluded as to the principal, but the administratrix, is not as to interest. This Court avoided the question of interest—they decided only that the

mode of proceeding resorted to in the former case, was not the proper form in which interest was to be claimed. The question of principal, however, was in issue. The Orphans' Court decided that it was due and should be accounted for, and this Court affirmed the decision. The question therefore of principal, is no longer an open one—it is settled. But the administratrix is clearly entitled to recover interest under this proceeding. *The Santa Maria*, 10 *Wheat.*, 442 ; *Mitchell vs. Mitchell's Lessee*, 6 *Md. Rep.*, 233 ; *Young vs. Frost, et al.*, 1 *Md. Rep.*, 395 ; *Bainbrigge vs. Baddeley*, 2 *Phillips*, 705 ; (22 *Eng. Ch. Rep.*, 705 ;) *Hammond's Lessee vs. Inloes, et al.*, 4 *Md. Rep.*, 138 ; *Cecil vs. Cecil, et al.*, 19 *Md. Rep.*, 72 ; *Williams, et al., vs. Banks, et al.*, 19 *Md. Rep.*, 22 ; *Cumberland Coal and Iron Co., vs. Sherman, et al.*, 20 *Md. Rep.*, 117 ; *Beall vs. Pearre, adm'r of Brown*, 12 *Md. Rep.*, 550. As to the solemn character of a judgment: *Keighler vs. Savage Manufacturing Co.*, 12 *Md. Rep.*, 383.

But laying out of view the former order, and looking at the case as it stands upon the evidence, no payment of any part of the surplus has been proved. Not one person entitled to participate has been shown to have received a dollar. No money indeed was ever paid to any body. The utmost that can be pretended is, that Mr. Donaldson credited the amount against a debt due him by a person, not a distributee, whose whole available estate, in Mr. Donaldson's hands, ultimately proved inadequate to answer the residue of the debt. In other words, that Samuel McClellan becoming too embarrassed to pay him in full, Mr. Donaldson proceeded to pay himself, so far as he could, out of the estate of which he was administrator, upon no better equity than that his debtor happened to be father to some children who were entitled to about one-sixth of the fund. It is true that releases subsequently obtained from the distributees, (except trustees of minors,) would have operated as a discharge. But those releases would have been granted without consideration, and as a favor merely. If Mr. Donaldson, having no right, legal or

equitable, to demand them, was disappointed, he had no reason to complain. That he overlooked, or forgot the importance of releases, is incredible, and his never obtaining them is equally significant, whether it be attributed to his never demanding them, or to refusal upon demand. The settlements claimed to have been made, involved (as none knew better than Mr. Donaldson,) a manifest breach of trust on the part of Samuel McClellan or David W. B. McClellan, which no Court can ever sanction.

The administratrix by calling upon the executors of Mr. Donaldson, to account, did not abandon the former order; she had no right to abandon it. There is no such thing as an abandonment of a decree in our law. A judgment can only be gotten rid of by satisfaction, release or payment. There is no waiver.

Interest upon the balance is properly allowable. It is the case of an administrator who ought to have accounted, and did not account for many years; who had money of the estate in his hands and made use of it for his own purposes. Where the duty is cast upon an executor or administrator to make distribution, and he fails to do so, he must pay interest. *Gwynn vs. Dorsey, adm'r of Howard*, 4 *G. & J.*, 453; *Lyles vs. Hatton, et ux.*, 6 *G. & J.*, 122; *Thomas, adm'x of Bradlee, vs. The Frederick County School*, 9 *G. & J.*, 115; *Comegys vs. The State, use of Dyckes*, 10 *G. & J.*, 186; *Chase vs. Lockerman*, 11 *G. & J.*, 185; *Conner vs. Ogle*, 4 *Md.*, *Ch. Dec.*, 425; *Mickle, adm'r of Campbell, vs. Cross, adm'r of Neilson*, 10 *Md. Rep.*, 352; *Gray vs. Thompson*, 1 *Johns. Ch. Rep.*, 82.

Donaldson's professional relation to some of the parties in giving him an advantage, which another might not have had, only made his duty to account the more imperative.

Nor does it lie in the mouth of his representatives to complain of the omission of the distributees to press their claims, when he persistently resisted every demand that was made upon him, from the first citation of the Court, in 1846, to the petition of Christopher R. McClellan, in 1859.

Donaldson's Ex'rs, *vs.* Raborg, Adm'rx, *d. b. n.*

It would be of dangerous consequence to allow such an instance of open neglect of duty on the part of an administrator who so perfectly understood what the law required, to pass into a precedent. As the money in Mr. Donaldson's hands probably yielded a much greater profit than six per cent. per annum, interest from the time when he was first in default is but a slight fine to impose upon him, while it is the least that can be regarded as an equivalent to the distributees for the use of their money.

Under the circumstances of this case the delinquent administrator ought to be charged with something more than simple interest. Rests ought to be allowed, if not annually, at least at some other reasonable periods. *Diffenderffer vs. Winder, et ux.*, 3 *G. & J.*, 342–7; *Comegys vs. The State, use of Dyckes*, 10 *G. & J.*, 186; *Jones vs. Foxall*, 15 *Beav.*, 392, 461; *Moore's executor vs. Beauchamp et al.*, 5 *Dana*, 75–79; *Barney vs. Saunders, et al.*, 16 *Howard*, 542–3.

[The mass of testimony in this case was very elaborately examined and presented by the counsel on both sides, but inasmuch as the Court in its opinion has analysed the same at considerable length, it is deemed unnecessary to include such examination in the argument.]

MILLER, J., delivered the opinion of this Court.

The first question to be determined in this case is, what matters are now, in view of the decision of this Court on the former appeals between the same parties, open for consideration?

Those appeals were from an order of the Orphans' Court, of the 26th of September, 1866, directing the executors of Donaldson to pay over to Catharine M. Raborg, as administratrix, *d. b. n.*, of Christopher Raborg, "*the principal sum without interest*" of $4228.76. The administratrix had, in June, 1866, filed a petition, alleging that Donaldson, the former administrator, *d. b. n.*, of Raborg, stood charged with this sum as due the estate of his intestate, in his last adminis-

52        MARYLAND REPORTS.

Donaldson's Ex'rs, *vs.* Raborg. Adm'rx, *d. b. n.*

tration account, passed April 25th, 1837, and remained so charged therewith down to the time of his death, in December, 1865, and praying his executors be ordered to pay it over to her with interest. To this petition, the executors, protesting their testator had duly administered the assets, and paid the distributees their shares, and reserving the right to show the fact of such payments thereafter, if their pleas should be held insufficient, pleaded three special pleas. One of which relied on limitations and lapse of time. Nothing was before the Court when this order passed, except the petition, the pleas, the two administration accounts of Donaldson, certain docket entries, and a petition of C. R. McClellan, filed in 1859, and the answer of Donaldson thereto, which will be more particularly noticed hereafter. Both parties appealed, the executors relying upon their pleas, and the administratrix insisting the order should have embraced interest on this sum from the 25th of April, 1837. In January, 1867, this Court delivered an opinion and passed a decree *affirming* the order.

The administratrix, then in February, 1867, filed another petition, praying the executors may be "made to render an account of the assets received and the payments made by their testator," under the 11th sec. of the 93d Art., of the Code, and in such account to charge themselves with interest on this sum to be calculated in such manner as the Court should think just and right. To this petition, the executors filed an answer, tendering an account and insisting their testator had fully administered the estate, and paid away in due course of distribution this whole balance to the parties entitled to receive it. Testimony was taken on both sides, and on the 29th of May, 1867, the Court below passed an order rejecting the account tendered by the executors and requiring them to state another, charging themselves with this sum and with simple interest thereon from the 25th of April, 1837. From this order both parties have now appealed.

It has been urged in argument by counsel for the administratrix that the affirmance of the first order irrevocably settles

the question that the executors are responsible for the principal sum—that this is *res adjudicata*—and yet they insist, at the same time, that the administratrix is not bound as to the interest.    To this position we cannot yield our assent; for, in our opinion, it is very clear that if the affirmance of this order concludes the executors from now showing the principal had been paid away by their testator in due course of distribution, it is equally conclusive as to the claim of the administratrix for interest.    It is established by a class of cases of which *Young vs. Frost*, 1 *Md. Rep.*, 395; *Hammond vs. Inloes*, 4 *Md. Rep.*, 164, and *Thomson vs. Albert*, 15 *Md. Rep.*, 282, are instances, that a decision once made by the appellate court in the progress of a cause, or an order or decree affirmed by that Court, thereafter, "becomes the *law of the case*" in its further progress: that is it becomes the law for *both sides* and "definitively settles the rights of the *litigant parties*."    The principle of those decisions is that neither party, in the further progress of the cause, can depart from the express terms of the affirmed order or decree, nor raise any questions which might have been raised before the order or decree appealed from, was passed. The order here affirmed is just as explicit that the interest shall *not*, as it is, that the principle *shall* be, paid over to the administratrix, and whilst the executors might then have relied on actual payment as a defence, she might also have then so framed her petition as to raise the question of interest. We think, however, the present case is not governed by those decisions, but rests upon entirely different grounds.    In the first place we find nothing in the opinion of this Court on the former appeals indicating a purpose to debar the parties from raising the questions now presented, by further proceedings in the Orphans' Court.    In that opinion the Court treated the petition as an application made exclusively under the 72d sec. of the 93d Art. of the Code, and after stating that there was no dispute between the parties about facts, and that the pleas admitted (as in express terms they did) that this sum of $4228.76 remained in Donaldson's hands as administrator at

the time of his death, addressed themselves to the question of the legal sufficiency of the pleas as technical bars to the proceeding and claim of the administratrix, and decided they were properly overruled. Then in reference to the claim for interest they say in the *then aspect* of the case that the Orphans' Court had no power to award it; that if a preliminary proceeding had been instituted under sec. 11 of the same Article to compel the executors to render a further account of Donaldson's administration, or if a prayer to that effect had been inserted in the petition then under consideration, interest upon proper proofs might have been made a subject of charge in such account and upon the *balance* thus ascertained including principal and interest, an order under section 72 would operate, but as no such preliminary proceeding had been taken, and no such prayer inserted, the Court below was right in refusing to award interest. We take this to be rather an intimation or suggestion that by further proceedings an accounting should be had under section 11, than a determination to the contrary. Perhaps the proper course to have been taken by the Court, was instead of affirming the order, to have remanded the cause with leave to amend the petition, and leave to the executors to answer. But however this may be, and whatever effect the affirmance of the order might have had to preclude the executors from setting up *on their motion*, by further proceedings, the defence now relied on, it is sufficient that the administratrix has herself, by further proceedings at her instance, asked the Court to compel the executors to discharge the duty imposed on them by the 11th section of our testamentary law. Under this section every administrator or executor of a deceased administrator, when rendering the account therein required, either voluntarily or by compulsion, whilst compelled to show the assets received, has the *right* to show the payments and disbursements made by his decedent, and of this right thus *conferred by statute*, he cannot be deprived by any action or decision of the Courts. Upon this ground we distinguish the present case from those before cited, fully

adopting the law announced in those decisions and doing no violence to the rule *stare decisis.*

We must, therefore, proceed to consider the questions presented by this record unembarrassed by the decision on the former appeals.

First, we must assume that there are no unsatisfied creditors of this estate. The lapse of time from the death of Raborg, in 1815, and the passing of the two accounts in 1834 and 1837, and the fact that those accounts show payment in full of all claims of creditors then exhibited, and the lapse of time from that date to the filing of these petitions in 1866, without any such claims being presented, compel us to presume that all debts have been paid. *Lark, et al., vs. Linstead and Heath,* 2 *Md. Rep.*, 420; *Gardner and Hughes, exrs., vs. Simmes, a. d. b. n.,* 1 *Gill,* 425.

Another preliminary question is presented in the exceptions to the account proposed for passage. It is said that all the allowances therein claimed are based on alleged payments made *anterior* to the date of the last account, and thus contradict its admission that this balance was *then due* the estate. This objection is not in our opinion tenable. We have said, the executors when accounting under this 11th section, have the right to show payments and disbursements made by their testator. They are in the same position in which he would be placed if now living, and offering to pass an additional account; and it is the usual practice in stating a subsequent account, to claim and have allowed payments not credited in the previous one, though made prior to its passage. But this is the case of payments claimed to have been made to distributees, and there is the stronger reason for their allowance, because there is nothing in our testamentary system expressly directing a distribution account in all cases to be stated, or distribution made in the Orphans' Court, or under its direction. The law says, after debts are paid, "the administrator shall proceed to make distribution" to the next of kin, and in case the surplus consists of property, *in specie,* and "he cannot satisfy the parties," he may have them summoned and

distribution made under the Court's direction, or the property ordered to be sold, (*Code, Art.* 93, *sec.* 138,) and he may appoint a meeting of persons entitled to distributive shares, or legacies or a residue, and make payment or distribution under the Court's direction and control. *Code, Art.* 93, *sec.* 143. Ordinarily it would be safer for an administrator to pursue the course pointed out by this latter section, but there is no express command of the law that he should do so. The duty is cast upon *him,* in the first instance, to ascertain who the distributees and persons entitled are—he administers the estate *in pais,* (4 *Md. Ch. Dec.,* 450,) and if he pays the right parties their proper shares he is protected, whether it is done under the sanction of the Court or not, and it makes no difference whether such payments be made before or after the passing of an account, showing the balance for distribution. Such payments, where estates are solvent, are frequently made before such an account is passed, and in some cases an administrator will be compelled to make them. *Code, Pub. Gen'l Laws, Art.* 93, *secs.* 140, 141.

The main question in the case now presents itself—has this surplus apparently due the estate, by the account of the 25th of April, 1837, been paid to the persons entitled to receive it? In order to determine this we have to examine the transactions and dealings of a deceased administrator with this estate and those interested in it, extending over a period of seventeen years, the last of which took place nearly thirty years before the first of these petitions was filed; and this is to be done too after the death of all the active participants in those transactions who, if alive might have aided us with their testimony in arriving at the truth. There is submitted for our inspection a large number of papers consisting of deeds, mortgages, receipts, accounts, and proceedings in chancery and in insolvency, some of which cannot, at this late day, be satisfactorily explained, and about which, in some particulars, theories and inferences on either side may be true. It is however clear that in 1837, and long prior to that time, all the

parties then entitled to claim this whole surplus, were of full age, laboring under no disability, and lived all of them for at least seventeen years thereafter, and during all this period no steps were taken by any of them to assert claim to this money. In the former case this Court said that neither *laches* nor limitations can strictly apply to the administratrix, because her petition was filed in June, 1866, soon after letters were granted to her (until which time her right of action had not accrued) and but a short time after the death of Donaldson, in December, 1865; and all that was stated in that opinion as to the administrator being a trustee for the next of kin, was said in view of the controlling admission then made that this money was in Donaldson's hands as administrator unadministered at the time of his death.    But as now presented this is not the case of an admitted possession and non-distribution of this money, thereby making a continuing trust where the possession of the trustee operates no bar, because such possession is all the while according to his title, and where an administration *de bonis non* was necessary in order to pass the title to the money to the distributees.    The defence now relied on goes behind the title and claim of the administratrix and asserts that Donaldson paid this surplus to the persons entitled to receive it, thus raising purely a question of fact in the solution of which the distributees and the executors of the administrator are alone interested.    In dealing with the evidence as applicable to this issue we are at liberty to, and, under the decision in *Ridenour, et al., vs. Keller,* 2 *Gill,* 145, must, consider lapse of time, acquiescence and *laches,* and give full effect to every presumption which the law allows, and draw every reasonable inference in favor of the due discharge of his duty by the administrator.    We may here also remark that when the former decision was made it did not appear who the distributees were, or that they had made any disposition of their respective shares, and in short none of the facts and evidence now shown and presented were then before the Court.

The record now shows that Raborg died in 1815, leaving a widow and eight children, most of whom were then of age and all became so, long prior to 1837.   He left a large real and considerable personal estate, and was at the time of his death a partner with his son Christopher in the firm of C. Raborg & Son.   Administration on his estate was granted shortly after his death, to his two sons, Christopher and William.   Donaldson's connection with the estate commenced in 1820, when by an agreement signed by the widow and seven of the children, he was appointed their agent to settle up the personal estate and the affairs of the partnership. About the same time proceedings for the sale of the real estate were instituted under the Act to direct descents.   In 1823 the administrators were removed.   On the 5th of June, of that year, Donaldson was appointed administrator *de bonis non*, and some time thereafter brought suit on the bond of the former administrators.   The net amount ($14,822.55) recovered in this action rendered necessary the passage of his second account in April, 1837, for by his first account passed in July, 1834, he had over paid the estate. When that suit was instituted is not shown, but the judgment was not recovered until April, 1836, and was probably not paid until shortly before the passage of the second account.

It is insisted on the one side, and denied on the other, that the shares of Christopher and William, the defaulting administrators, in this prospective surplus were considered and allowed by the referees in making up the amount for which this judgment was rendered.   The suit was against the administratrix of William Raborg, a surety on the bond, who was admitted in argument, to have been a brother of the intestate. The award for $15,000 was made in April, 1836, Donaldson himself being one of the referees.   It is said there was no plea of set-off, and that the referees acting under a mere "rule of reference" could not with propriety have considered these prospective shares.   We are not furnished with the pleadings

or any other part of the record except the award, but we see no difficulty, even without such plea, in the allowance being made, if it had been asked for, and not objected to by Donaldson. It would certainly be very unreasonable to suppose that these parties would have allowed a large judgment to be recovered against the estate of their deceased uncle for *their default,* without making an effort to diminish the amount by giving up their shares in whatever surplus might remain for distribution from the proceeds of the judgment; and it would be still more unreasonable to suppose that those who represented the uncle's estate would not have insisted on this allowance, or that Donaldson, the trusted and confidential friend, agent and professional adviser of all the parties, who must have been familiar with the estate and the debts to be paid, and therefore knew what the surplus would be, and could easily have calculated the precise amount of these shares therein, would have objected. But for more than thirty years no claim to a share in this surplus was ever made by either of these sons, or by any one claiming to represent either of them, or the creditors of either. From this lapse of time and *laches,* if any right existed, and from all the circumstances of the case as disclosed by the record, we think ourselves justified in sustaining the position taken by the counsel for the executors, that these two shares were allowed and settled in the amount for which this judgment was rendered. It may be observed also, as to the share of Christopher, that by the agreement of 1820, he was to be allowed $20 per week, until the administration of the personal estate was closed, or until circumstances may render such weekly payments unnecessary or improper, on account of his part of said estate being exhausted, and Donaldson was authorized to make these payments from moneys arising either from the estate or the copartnership concern. If any portion of this sum was paid him out of the personalty, (about which there is no proof either way,) his share must have been exhausted long prior to this judgment.

The shares of the widow and the six other children, both in the real and personal estate, became, by various conveyances executed prior to 1832, vested in David W. B. McClellan and in his brother, Samuel McClellan, who had married Eliza, one of the daughters. The shares of the widow and two children were conveyed to David absolutely; two other shares were conveyed to him in trust for the benefit of Mrs. Eliza McClellan (who died in 1830) for life, and after her death in trust for her children; he was also assignee of a mortgage of another share belonging to Mrs. Rachel Wagner. The remaining share was conveyed to Samuel in trust for the benefit of the grantor for life with such limitations that, after 1830, by reason of the deaths of the other parties interested, the beneficial interest in the whole remainder after the life estate of the grantor, became vested in C. R. McClellan, the eldest son of said Samuel and Eliza.

We have examined these conveyances and are of opinion that under them, the two McClellans, David and Samuel, were entitled to receive, and the administrator was authorized to pay to them, this entire surplus. It is evident, Donaldson himself supposed he was entitled to regard them as owners, not only by his dealing with them as such, but from the fact that the originals of all these conveyances were found amongst his papers; they must have been given to or procured by him as evidence of the title of the McClellans to the fund.

But it is argued that David cannot be treated as assignee of the share of Mrs. Wagner. It appears she and her husband mortgaged all her interest in her father's real, and her distributive share of his personal estate to Miller & Craig, to secure a debt of $2921.53, with interest from July 7th, 1818; this mortgage was executed in September, 1818, and no time was limited in it for payment of the mortgage debt. In March, 1825, Miller & Craig assigned this mortgage to Robert Oliver, who, in August, 1826, assigned it to the said David. This latter assignment recites payments on the mortgage debt to the amount of $1356.55, out of Mrs. Wagner's share of the

proceeds of certain specified real estate theretofore sold, and it is urged we must presume the balance to have been paid out of her share of the proceeds of the other real estate. The mortgage however was never released, and most of the sales of the real estate subsequent to those recited, were made in October, 1825, prior to the date when it was assigned for value as an open outstanding mortgage. No auditor's account distributing the proceeds of subsequent sales is shown, and it no where appears that any part of the proceeds of such sales was ever paid to either of the assignees of this mortgage on account thereof. Besides this there remains the long lapse of nearly forty years, during which, Wagner and wife, laboring under no disability, made no claim against either the assignee or Donaldson, but left this mortgage outstanding and unreleased to pass into Donaldson's hands as evidence of David W. B. McClellan's title to claim under it the wife's share in this surplus. Under these circumstances we think Donaldson is entitled to protection if he paid her share to the said David.

It remains then to be decided whether Donaldson paid and settled with the two McClellans this surplus. To determine this, we must look to the transactions between these three parties, and to the documentary and other evidence produced on this subject. It is unnecessary and would be impracticable to set out in this opinion all the details of these transactions; we can only state some prominent facts and the conclusions at which we have arrived. The dealings were complex and numerous, and some of the papers, as we have said, cannot now be satisfactorily explained. They clearly show, however, that the most intimate, friendly, business and professional relations, existed between all these parties, and it is impossible for any one to read this record, without having the conviction forced upon him that each of the two brothers, Samuel and David, was perfectly cognizant of every business transaction of the other.

David was the principal creditor of the Raborg estate, and as such was paid by Donaldson as administrator over $16,000.

In May, 1827, being then the owner in his own right of one share and assignee of Mrs. Wagner's mortgage of another share, he executed to Donaldson an assignment (not recorded but found among his papers uncancelled) of all his interest in Raborg's estate real and personal, both as assignee of creditors and of the heirs at law or some of them, and the creditors of such heirs, to secure advances theretofore made to him by Donaldson to the amount of $7451.46 and to secure any advance thereafter to be made. In June of the same year he executed a mortgage of real estate to Donaldson to secure a note of $1000 endorsed by his brother Samuel, with privilege of renewal, as long as Donaldson might think proper to continue the credit.

On the 25th of April, 1832, he gave a receipt to Donaldson as administrator of Raborg, for $1500, stating this sum was paid by Donaldson to him as assignee of the widow and all the named children including Wagner and wife, whose shares he then held. In explanation of this there are offered on the other side two papers, one a list of the creditors of Samuel McClellan and Geo. H. Seckel, who appear to have been discharged under the insolvent laws in 1816, the other an assignment and transfer under seal dated January, 1832, by most of the creditors of this firm, of all their claims to the said David, provided he would before the 1st of May then ensuing "deposit" in Donaldson's hands the sum of $1500 to be divided by Donaldson ratably amongst said creditors; and appended to this is Donaldson's acknowledgment dated the 25th of April, 1832, that he was in possession of the $1500 referred to in this transfer. It is said first there is no evidence that Donaldson paid this money to the creditors. Looking to the testimony of Ward as to the calculations made on the list of debts of the dividends due to some, and the per centage to all, and in the absence of all proof of any proceedings instituted by any of these creditors against Donaldson, from that day to the present time, we could not assume he has not paid them. But assuming he never did,

this fact would by no means destroy or impair the efficacy of this receipt. By this arrangement, that is, by authorizing Donaldson so to apply $1500 of the moneys then, or thereafter coming to him as assignee of these distributive shares, and giving this receipt, David obtained what he bargained for from these creditors—he became the transferee of claims against this firm to an amount exceeding $30,000—and by the terms of the transfer Donaldson was to distribute the money, and the creditors were bound to look to him for payment of their dividends. Upon the execution of these papers the title to the claims passed to David, and the money was in the hands of Donaldson for the use of the creditors who could have collected it from him. There was, therefore, a full and valid consideration for this receipt as between David and Donaldson whether the latter ever actually paid the money to the creditors or not. Again it is said Donaldson must have paid or retained to himself as administrator, the dividend due under this arrangement to the "Raborgs" who appear on the list as creditors to the amount of $19,289.53 and would therefore be still responsible for such dividend. The answer to this is that the transfer is signed, amongst others, by "Charles F. Mayer, trustee of creditors of C. Raborg." There is no other claim on the list of creditors save that of the "Raborgs" to which this signature is applicable, and as it thus appears Mr. Mayer was authorized to represent this claim in executing the transfer, and thereby became one of the contracting parties in this arrangement, he was entitled to receive the dividend due thereto. This receipt being, therefore, a valid acquittance to Donaldson, his executors are entitled to a credit for the $1500 in their account.

In October, 1832, David executed another mortgage to Donaldson, to secure notes amounting to $8000, drawn, some in favor of David and others in favor of Samuel. In May, 1834, and July and August, 1836, mortgages were also executed to him by Samuel, to secure notes to the amount of $8000. On the 13th of April, 1837, twelve days before the

passage of the second administration account, Mr. Neilson, at the mutual request of Donaldson and Samuel, made a "rough statement of an account" between them, embracing "the amounts received by said Donaldson, as agent on account of the real and personal estates of C. Raborg, and of the firm of C. Raborg & Son," for the purpose of having the balance due Donaldson (shown by the account to be $29,723.78) secured by mortgage. On the 19th of April, 1837, Samuel executed a mortgage to Donaldson for $24,953.53, which recites that "upon a settlement of all accounts and reckonings between the parties" this sum was found due the mortgagee; and on the *same day*, Donaldson executed to Samuel, who, by deed from David, of July, 1835, had become the owner of the equity of redemption in the property 'covered by the two mortgages previously given by David, a release of those mortgages, in which it is recited that all the notes intended to be thereby secured, and all other notes substituted for them "have been cancelled." Six days after this, the account of the 25th of April, 1837, was passed; and we find that a formal receipt in full and release to himself as administrator, was prepared by Donaldson to be signed by David, as assignee of the widow and children, of their several distributive shares of the personal estate of the late C. Raborg, deceased. This paper was never signed and is not dated, but is in Donaldson's handwriting, and from an inspection of it, and from the figures and calculations made upon it by Donaldson, showing the exact net proceeds of the judgment with which he is charged in his second account, we have no doubt it was prepared cotemporaneously with this settlement and the passage of this account.

We have examined with care all the papers and evidence relating to the settlement thus shown to have been made shortly before this account was passed, with all the light thrown upon them by the able and ingenious argument of counsel, and have come to the conclusion that in the settlement then made all the remaining liability of Donaldson to

David and Samuel McClellan, as assignees of all the distributees of this surplus, was considered, included and settled; that David not only knew, but assented to and took part in it, or authorized his brother Samuel to act as his agent and represent his interest in making it.   In this conclusion, we are fortified by the fact that neither David nor Samuel, though they lived, the former for seventeen and the latter for twenty-one years after this settlement was made, nor any one representing either of them, or the creditors of either, ever made any claim on Donaldson for these distributive shares thus held by them partly in their own right and partly as trustees.   During all this time they were prompted to the assertion of such claim, if any existed, not only by their own interests, but by the demands of duty as trustees, bound to protect the interests of their *cestuis que trust.*

We can discover nothing in the subsequent proceedings of Donaldson in foreclosing the mortgage of Samuel, nor in any part of the evidence to warrant the inference, that in making this settlement in 1837, he was himself guilty of any breach of trust, or cognizant of any such breach on the part of those with whom he settled.   Samuel McClellan did not apply for the benefit of the insolvent laws for more than a year thereafter, and appears to have then been the owner of a large amount of real property; and there is nothing to show that David was not perfectly solvent during his whole life.

By the record on the former appeals it is shown that in October, 1859, after the death of his father, C. R. McClellan, the eldest son of Samuel and Eliza McClellan, who was of full age in 1837, and whose interest has already been stated, filed a petition averring he was entitled to a share of this surplus, and praying that Donaldson might be ordered to pay it over to him.   Donaldson answered this petition in November of the same year, and there the case ended.   Comment has been made on this answer as being in its statements inconsistent with the defences now set up by his executors.   We do not perceive any glaring inconsistency between what Donaldson

then said and what his executors now assert. What, in effect, he then did say is, that more than twenty-two years ago he *paid* and *settled* this entire residue to and with Samuel McClellan, who represented himself to be fully authorized by the petitioner and his other children, and by *all other representatives* of the estate, to receive from him their proportions of this residue; and that he is under the very strong impression said Samuel showed him written authority so to pay and settle said amount; that he made this payment or settlement with said Samuel in the full confidence that he was empowered as aforesaid; and he positively avers that said Samuel did promise to obtain from *said representatives* formal releases of their claims for their respective shares of said residue and this respondent did *prepare* and deliver to said Samuel *releases* to be executed as aforesaid. This answer appears to have satisfied the petitioner, and the fact that the proceeding was then suffered to drop, materially strengthens the conclusions already stated in favor of the executors.

Had the transactions disclosed by this record been of more recent origin, our conclusions on some points in regard to them might have been different. But we have in our investigations and in making up our judgments on the facts, considered this as a case to which the views expressed by Judge ARCHER, in *Stiles, et al., vs. Brown, et al.,* 6 *Gill,* 356, are eminently applicable. In that case much less time had elapsed than in this, and yet the Judge says: " In our enquiry into this question we cannot forbear to remark that the account now sought at the hands of the defendant is of transactions not of recent origin, but of an antiquity, which if it do not in point of law subject the party to be visited with all the consequences of *laches,* yet necessarily subjects his case to a severer scrutiny and the defendant's evidence to a more indulgent consideration. The time too at which this claim is sought to be enforced, several years after the death of the party with whom the transactions were had, who if living, it is reasonable to believe might have explained what at this distance of time

has thrown difficulties over the transactions complained of; and the failure during the life time of the defendant's intestate to institute this proceeding, are circumstances calculated to throw suspicion over the claim of the complainant and in a doubtful case would strengthen the defences which might be set up in behalf of the defendant."

The views we have expressed necessarily dispose of the claim for interest. The executors are entitled to have their account passed and admitted to record. The order appealed from will be reversed and the cause remanded to the Orphans' Court with directions to rescind their former order of the 26th of September, 1866, and to admit to record the account rendered by the executors and accompanying their answer in this case. This Court has full power over the question of costs in such cases, and inasmuch as the administratrix is acting merely in a representative capacity, and as the executors ought to have presented these defences at an earlier period they will be required to pay the costs in both Courts.

*Order reversed and cause remanded, costs in both Courts to be paid by the executors.*

