# James L. Lark, Stephen Lark and others, *vs.* Landy Linstead and Thomas Heath.

Since the act of 1843, ch. 304, the general right that an executor, as such, has to dispose of the property of his testator, has been somewhat abridged in this State.

A testator died in 1826, leaving a will duly admitted to probate on the 20th of December of the same year, whereby he devised his property to his widow for life, and after her death to his children, and appointed his widow the executrix thereof, who assumed the trust and returned an inventory in March 1827, and afterwards settled two accounts with the orphans court, the last of which, entitled, " An additional final account," was passed on the 17th of June 1829. In November 1829, the widow sold a negro boy, part of the estate devised by the will, to the appellee. HELD:

That the time which elapsed from the death of the testator and taking out of letters testamentary, in the absence of all proof to the contrary, is sufficient to raise the presumption that the widow had settled the estate, paid all its debts, and held and sold the boy as legatee and not as executrix, and of course sold only her life interest in the slave.

This presumption rests upon the ground, that it is the duty of the executrix to discharge the debts in due course of administration, and in the period within which, by law, she would be compelled to pay them, and then to pay the legacies. As to such legacies as were bequeathed to herself, the law assumes that she held them as legatee, after the lapse of a sufficient period allowed for the settlement of the estate.

The appellee claiming title to the negro under the widow as executrix, after her office had been fulfilled, must show clearly that she acted in her representative capacity at the time she sold the negro, and it is not sufficient

to show that he bought under the impression that the executrix was authorised to sell the boy for his own life.

The appellee knew of the will, and ought to have known that after payment of debts, the negro was the property of the widow only during *her life*, it was therefore his own negligence if he purchased without requiring proper evidence of her title and right to sell.

The interest of the legatees in remainder could not be injuriously affected, without evidence that the widow acted in the sale as executrix, in which character alone could they be bound by her acts.

The answer in this case responsive to the bill was not rebutted by proof, but it did not distinctly aver that the appellee in this purchase dealt with the widow as executrix. It stated that he bought the boy *bona fide* as a slave for life, and that he dealt with the widow as having full authority to sell the negro for life, and that he did not know she had only a life interest in the boy. HELD, that this was not sufficient to bind the interest of the legatees in remainder.

A testator devised personal property to his wife for life, and after her death to his children. One of the children married after the death of the testator, and died without issue before the death of the widow, the tenant for life. HELD, that this legacy vested during the life of the wife, and her surviving husband was therefore entitled to her interest therein after the death of the widow, the tenant for life.

APPEAL from the court of chancery.

The appellants, the complainants below, are the children of Greenbury Lark, who died in 1826, leaving a will duly executed, dated the 22nd of December 1821, and admitted to probate on the 20th of December 1826, whereby he bequeathed all his property to his wife Amelia Lark, during her single life, and after her death to be equally divided among his said children, share and share alike, and appointed his wife his executrix, who took upon herself the execution of the trust, and returned an inventory on the 17th of March 1827, sold a portion of the personal estate at public sale, and passed two accounts with the orphans court. The first on the 25th of November 1828, entitled, "The first and final account of Amelia Lark, executrix of Greenbury Lark, deceased," shows a balance of $698.11, and the second on the 17th of June 1829, entitled, "The additional final account," &c., shows a balance of $567.28, due the estate.

The bill was filed on the 20th of October 1849, and after stating the above facts, and averring that the executrix sold personal

property sufficient to pay all the debts of the testator, charges that she possessed herself of and retained as tenant for life, the residue of the said property under said will, among which property was a negro boy, a slave for life.   That afterwards the said *Amelia* sold some interest in said slave, what your orators know not, but not exceeding her life estate in said boy, to the appellee, Linstead, for $35, who has since held possession of said slave.   That the said Amelia the tenant for life, died in August last, when the property in said slave became vested in complainants jointly under the will, and that Linstead had re-fused to deliver him up, pretending that the said Amelia had sold the said slave to him as a slave for life.   The bill then de-nies the said slave was so sold to him, and charges that Linstead well knew that said Amelia was tenant for life only of said boy? and had not power to sell him for any longer time, and by way of special interrogatory prays that said Linstead may state at what time he purchased and took possession of said negro boy, whether he did not then know that Amelia Lark, was the ten-ant for life only of said slave? and that the said Linstead may further disclose the amount of the purchase money which was paid for said slave, and for what period of time he purchased the same?   The bill also states that the defendant Heath, mar-ried Emily one of the daughters of the testator in 1843, who died in 1846, without issue, leaving said Heath her husband surviving her.   The prayer is for a sale of the negro, an ac-count of his hire from the death of said Amelia, and for gene-ral relief.

The answer of Linstead avers that the said negro was sold to him by the said Amelia Lark, to raise funds to pay the debts of the testator, and that at the time of said sale and purchase, there were outstanding debts of the said testator chargeable to his executrix.   That he purchased said negro in November 1849, *bona fide* as a slave for life, for $35, and that he dealt with said Amelia, as having full authority to sell the said ne-gro boy for the life of said boy.   That he did not know that she had only a life interest in said boy when he purchased him. That she delivered possession of said boy to respondent as a slave for life, and that as such he has always held and claimed

Lark et al., vs. Linstead and Heath.

him with the knowledge of said Amelia and of complainants. That at the time of said purchase the said boy was a child between two and three years old, and that he gave full value for him. That he purchased the said boy as a slave for life, and that as such he was sold to him by said Amelia, and at the time of the sale he believes she had full right to sell said boy as a slave for life, to discharge the debts of the estate, and that she had full right to sell the boy, (if he was born prior to the death of the testator,) as executor of said Lark, and if born subsequent to the death of the testator, she had full authority in her own right to sell him, and he thus claims the said boy as a slave for life.

The answer of *Heath*, states that he is surviving husband of Emily a daughter of the testator, who died without issue in 1846, and claims as such surviving husband, the interest of said Emily in said negro.

Testimony was then taken, showing that the said Amelia Lark sold the boy in question to Linstead in the fall of 1829, for $35, and that he was then about five years old, and that the value of a sound boy of that age, at that time, as a slave for life, was from $75 to $100. The other testimony consisting of the accounts of the executrix, &c., is sufficiently stated in the opinion of this court. The Chancellor, (Johnson,) dismissed the bill, by a decree passed on the 2nd of December 1850, and delivered an opinion which is reported in 2 *Md. Ch. Decisions*, 162. From this decree the complainants appealed.

The cause was argued before Le Grand, C. J., Eccleston, Mason and Tuck, J.

*B. T. B. Worthington* for the appellants.

1st. The proof establishes the fact that Amelia Lark, the executrix, had terminated her connection with this property in her representative character, and held the same at the time of the sale to Linstead, as tenant for life. And there being no other evidence of the title of Amelia Lark, to the property remaining on hand at the period of the sale to Linstead, than that furnished by the recorded evidence of the condition of the

estate at that time, it is an established principle of law in such cases to infer, that her possession in the character of legatee had commenced, and that in the absence of any proof to the contrary, that she sold to Linstead only her interest as legatee. 2 *Story's Eq.*, *secs.* 843, 844, 847, (note.) *Fearne on Remainders and Ext'ry Dev.*, 414, 415. *Evans vs. Iglehart*, 6 *Gill and Johns.*, 183. 2 *Kent's Com.*, 324. *Watkins vs. State, use Shaw*, 2 *Gill and Johns.*, 220. *Boyd vs. Boyd*, 6 *Gill and Johns.*, 32. *Gardner and Hughes, vs. Simmes*, 1 *Gill*, 425. *Burnett vs. Roberts*, 4 *Dev.*, 81. *Jones vs. Zollecoffer, N. C. Term Rep.*, 213.

2nd. The answer of Linstead is not responsive to the bill, in respect of the defences therein set forth, and that there is no evidence to sustain them as independent averments, in avoidance of the charge made out by the complainant's proof, and the rules of law applicable to it. And the proof in the cause is sufficient to rebut the averments in the answer, even if considered responsive to the material allegations of the bill. *Story Eq. Pl.*, *secs.* 850, 853. *Clarke's Ext'rs, vs. Riensdyk*, 9 *Cranch Rep.*, 153. *Green vs. Hait*, 1 *John's Rep.*, 580. 14 *John's Rep.*, 74. 17 *John's Rep.*, 366. *Newell vs. Huntington*, 1 *John's Ch. Rep.*, 107. *Pennyman's Adm'r, vs. Getting's Ext'rs*, 2 *Gill and Johns.*, 208.

3rd. The defendant Heath has no interest in the property in dispute, in right of his marriage with the deceased daughter of Greenbury Lark. *Bohn vs. Headly*, 7 *Har. and Johns.*, 257. 1842, *ch.* 293.

4th. The inadequacy of the price paid by Linstead to the value of the property as proved, indicates, in the absence of direct proof to the contrary, that Linstead purchased some interest less than an absolute title. And the circumstances under which Linstead acquired possession of the property in question, the time, the condition of the personal estate, the gross inadequacy of the price, the family and pecuniary connection with the property and the administration of the assets, as affecting him with notice of the title of the complainants, establishes a transaction of fraud in law, so far as the interest in remainder of the complainants is concerned, which a court of equity ought not to permit to be divested by such a transaction.

*Causin* for the appellee.

1st. The complainants by their bill have made the defendant a witness, by *special interrogatories*. He was bound to answer these special inquiries, and could not rely upon a denial of the general allegations of the bill. His answers to these special questions are clearly evidence. *Story's Equity Pl.*, *sec.* 853, 858, *note* 2. The interrogative part is always regarded as the most important portion of the bill. *Story's Eq. Pl.*, *secs*. 35, 36, 265. The complainants could except to the answers if they were insufficient. *Alex. Ch. Pr.*, 64.

The inquiries in the bill are specific. Did you purchase from Mrs. Lark? Did you know that Mrs. Lark was then only tenant for life? And what interest in the slave did you purchase? The answer is also specific and responsive to each of these inquiries, and can only be overcome by the evidence of two witnesses, or of one with pregnant circumstances. *Hopkins vs. Stump*, 2 *H. & J.*, 301. *Salmon vs. Clagett*, 3 *Bland*, 125. *Roberts vs. Salisbury*, 3 *G. & J.*, 425. *Dilley vs. Barnard*, 8 *G. & J.*, 170. *Gibson vs. McCormick*, 10 *G. & J.*, 65.

2nd. Mrs. Lark at the period of the sale in November 1829, had full right as executrix, of absolute disposition over the personal estate of the intestate, and the evidence establishes a sale for the life of the boy. 2 *Wms. on Excrs.*, 795, 796, 797, 2 *G. & J.*, 224, 225. 4 *Dev. and Bat.*, 82. *Allender vs. Riston*, 2 *G. & J.*, 86.

The passage of the final account proves nothing against Linstead, and would not affect the title of the property. If the executrix sold when she had no right to sell, she only committed *a devastavit*, the title is not affected by it.

LE GRAND, C. J., delivered the opinion of the court.

It appears from the proceedings in this case, that the complainants are the children of Greenbury Lark, who died in 1826, leaving a will duly executed, which was admitted to probate on the 20th December 1826. By his will he bequeathed all his property to his wife for life, and after his death to be equally divided among his children, share and

share alike. His wife was appointed his executrix, and as such returned an inventory in March 1827, and subsequently passed two accounts in the orphans court, the last of which—designated as an additional *final* account—was passed on the 17th June 1829. In November following, a slave boy, part of the property left by Lark and bequeathed by his will, was sold by the widow to the defendant, Linstead, for the sum of $35, the boy being at the time five years of age.

The bill alleges, that the estate had been settled, all debts paid, and that Mrs. Lark retained possession of the residue of the property unsold at the time of the settlement of the estate, in her right as tenant for life, under the will of her husband, and being so possessed sold *some* interest to the appellee, Linstead, but the extent thereof unknown to the complainants, but not exceeding her life. The bill further avers the death of Mrs. Lark, the tenant for life, and claims that the complainant's interest in remainder had vested. The bill prays decree for sale for purpose of distribution, and an account of the value from the death of Mrs. Lark to the period of the sale. It also appears, that the defendant Heath had married a daughter of the testator, after his death, but before the death of Mrs. Lark, and the question is submitted, whether he has any interest?

The defendant, Linstead, admits the truth of most of the facts set forth in the bill, but in reply to one of its interrogatories, avers, that he purchased the boy for life, and adds, Mrs. Lark told him at the time of the sale, it was made to enable her to pay the debts of the estate. There is, however, no proof in the cause, that at the time the sale of the boy was made, there were any debts of the estate unpaid.

The above is a sufficiently full statement of the facts of the case to present the question which this court is called upon to decide, to wit: What interest in the boy did the respondent, Linstead acquire by his purchase?

We do not regard ourselves called upon to contest the principle asserted by the counsel for the appellees, that an executor, as such, has the right to dispose of the property of his testator. This general right has heretofore been fully discuss-

.ed by the Court of Apeals, in the case of *Allender, Adm'r, vs. Riston,* 2 *Gill and John.*, 86, and we therefore deem it useless to recapitulate what was then established. We observe, however, that since the act of 1843, ch. 304, the general right has been somewhat abridged in this State; that act, however, has no application to the case now before us.

The time which elapsed from the death of the testator, and taking out letters testamentary, in the absence of all proof to the contrary, is sufficient to raise the presumption that the widow had settled the estate of her husband, paid all its debts, and held and sold the boy, as legatee, and not as executrix.

In the case of *Gardner and Hughes, Ex'rs, vs. Simmes,* 1 *Gill,* 428, the court says: "This presumption rests upon the ground that it was the duty of the executrix to discharge the debts in a due course of administration, and in the period within which, by law, she would be compelled to pay them, and then to pay and deliver the legacies bequeathed by the will. As to such legacies as were bequeathed to herself the law will assume that she held them as legatee, after the lapse of a sufficient period allowed for the settlement of the estate."

In the case before us, the executrix settled a final account in June 1829, and in November following sold the boy. There is no evidence whatever of any debts being due by the estate at the time of the sale, nor is there any evidence that the boy was sold by her as executrix; and therefore, the presumption of the law arises, that she sold him as legatee, and not as executrix, and, of course, only disposed of her life interest, which, under the pleadings and proof in the cause, she was only competent to do.

It is said, however, that the answer being responsive to the bill, and not being rebutted by proof, is evidence that the defendant purchased an absolute interest in the negro, and that the presumption of which we have spoken is thus removed. It is no where distinctly averred in the answer, that the defendant in this purchase dealt with Mrs. Lark as executrix. He says, "that he purchased the said negro boy in Novem-

ber 1829, *bona fide*, as a slave for life, for the sum of thirty-five dollars, and that he dealt with said Amelia Lark as having full authority to sell said negro for the life of said boy, that he did not know that said Amelia Lark had only a life interest in said boy as charged in the bill."

Having passed a final account, and there being no proof of any necessity for a sale for the purposes of the estate, she could sell rightfully only in one character—that of legatee for life. The law will not presume she committed a wrong upon the legatees in remainder. As far as we can gather from the testimony, she sold property to pay the debts and all charges, except her commissions. The defendant claims title under her, as executrix, after her office had been fulfilled, as far as we have any evidence on the subject. He should show clearly that she acted in her representative capacity at the time she made the sale. 2 *Gill and John.*, 99. It is not sufficient to show he purchased under the impression that Mrs. Lark was authorised to sell the boy for his own life. The defendant knew of the will, because he was surety on her testamentary bond. He ought to have known, that after payment of debts, &c., the boy was her property only during her own life; and it was his own negligence if he purchased from her without requiring proper evidence of title and right to sell. As between vendor and vendee there might be ground on which to decide against the former, but where the interests of third parties are involved, they cannot be injuriously affected without evidence that Mrs. Lark acted as executrix, in which character alone could they be bound by her acts.

Greenbury Lark, the testator, died in 1826, and his wife, his executrix, in 1849. Their daughter married in 1843 and died in 1846, and the question is, whether her husband, the defendant, Heath, hath any interest in the subject of this controversy? We regard the legacy as having vested during the life of his wife Emily. The case of *Spence vs. Robins*, 6 *Gill and John*, 507, establishes this proposition.

> *Decree reversed and cause remanded*
> *for further proceedings.*