Baker, Ex'r *vs.* Bowie, Adm'r, &c.

(Decided 17th June, 1891.)

JOHN A. BAKER, Executor of ANN H. BOWIE *vs.* R. IRVING BOWIE, Administrator d. b. n. c. t. a. of WILLIAM B. BOWIE, deceased.

*Administrator d. b. n.—Unadministered assets.*

Section 72 of Article 93 of the Code, provides that the Orphans Court shall, on the application of an administrator *de bonis non*, order the administrator of a deceased administrator to deliver over to him all the bonds, notes, accounts, and evidences of debt

which the deceased administrator may have taken, received, or had as administrator at the time of his death. HELD:

That where an executrix, who is also residuary legatee, pays the debts of the testator, discharges the only legacy left by him, makes collections of debts due the testator and invests the same, treating it as her own, an administrator *de bonis non* of the testator is not entitled to receive from her executor any part of the estate of her testator which she had collected and administered, but only such part as remains unchanged at the time of her death.

APPEAL from the Orphans' Court of Prince George's County.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, ROBINSON, IRVING, BRYAN, MCSHERRY, and BRISCOE, J.

*F. Snowden Hill,* for the appellant.

*C. C. Magruder,* for the appellees.

It is now well settled that all property, including money remaining specifically after the death of the original executor or administrator, is unadministered property, and the appointment of an administrator *de bonis non* is *indispensably* necessary to give *title* to the *distributees,* even though all the debts are paid, and if the first administrator transfers the property to the distributees, their possession is liable to be divested by the subsequent grant of letters *d. b. n. Alexander vs. Stewart,* 8 *G. & J.,* 227; *Sibley vs. Williams, Ex'r,* 3 *G. & J.,* 61; *Lemmon vs. Hall,* 20 *Md.,* 171; *DeValengin's Adm'rs vs. Duffy,* 14 *Peters,* 291; *Donaldson's Ex'rs vs. Raborg's, Adm'x d. b. n.,* 26 *Md.,* 324.

As to property or money received by the executor or administrator after the death of the intestate, the U. S.

Supreme Court in the case of *DeValengin's Adm'rs vs. Duffy,* use this language : "Whatever money or property is lawfully recovered or received by the executor or administrator, after the death of his testator or intestate, in virtue of his representative capacity, he holds as assets of the estate, and he is liable therefor in such representative character to the party who has a good title thereto."

If then all unadministered assets have to pass through the hands of an administrator *d. b. n.,* to vest *title* in the distributees, the parties entitled are remediless without the order contemplated in Art. 93, sec. 72, of the Code, as no suit can be instituted by the administrators *d. b. n.,* to recover said assets until said order is first obtained. *Johnson, Adm'r d. b. n. vs. Farmers' Bank of Md., et al.,* 11 *Md.,* 414.

IRVING, J., delivered the opinion of the Court.

The appellee filed a petition in the Orphans' Court of Prince George's County, alleging the death of Wm. B. Bowie on the 20th of November, 1888, and that he left a last will and testament by which he appointed a certain Ann H. Bowie his executrix, and that the said Ann H. Bowie had since died, leaving a will, by which she appointed John A. Baker, the appellant, her executor; that on the 17th of June, 1890, the Orphans' Court had appointed the petitioner administrator *de bonis non* of Wm. B. Bowie. The prayer of the petition is that "John A. Baker, executor of Ann H. Bowie, be compelled to deliver over to him (the petitioner) all the bonds, notes, accounts and evidences of debt which the said Ann H. Bowie may have taken, received or had, as executrix of William B. Bowie, deceased, at the time of her death; and also to pay over to him the money in her hands as such on or before some certain day to be named by the Court." An order was passed by the Court requiring the appellant to show cause by a particular day, on

which day the appellant filed his answer, stating that he had on that day as executor of Ann H. Bowie filed an account in that Court, showing the condition of the estate of William B. Bowie in her hands as executrix at the time of her death, and, as Mrs. Bowie had never passed any account, he prays that this account may be regarded as a compliance with the order to show cause, and as fully disclosing the condition of the estate. The respondent by his answer says he does not object to passing over all assets of the estate which remained in Mrs. Bowie's hands at her death unappropriated by her as residuary legatee of her husband. The answer also says that William B. Bowie left a large estate, but few debts, and his will, except one legacy, gave all of his estate to his wife, who had paid the legacy and all the debts; and after paying the debts and legacy had appropriated to her own use such portions of the estate as were collected or settled by her, as residuary legatee; and insists that such assets as were so appropriated by her, should not be passed over to the administrator d. b. n. of Wm. B. Bowie.

At the hearing in the Orphans' Court, it is agreed that the following facts are in evidence, viz., that by his will William B. Bowie left all his personal property to his wife, after paying debts and a legacy to his daughter which has been paid; that the will made Mrs. Bowie executrix; that she qualified as such and gave notice to creditors which expired 3rd of June, 1889; that she employed her sons as agents to close up the estate for her; that she submitted a partial account to the Orphans' Court a short time before her death, which account is exhibited, and which was never perfected, nor acted on by the Court; that she died in June, 1890, leaving a will duly admitted to probate, making John A. Baker executor, who filed the exhibited account as her executor, showing the condition of Wm. B. Bowie's estate as Mrs. Bowie

left it, and he found it—and that John A. Baker testified that what he claims Mrs. Bowie appropriated to herself amounted to $34,948.90—and was made up as follows :

| | |
|---|---:|
| Cash | $6,655.09 |
| Due bill of B. H. C. Bowie. | 4,074.71 |
| Note of A. W. Bliss to executrix | 2,250.00 |
| Note of Wm. L. Marbury to executrix | 917.18 |
| Mortgage notes of R. B. B. Chew to executrix | 8,000.00 |
| Real estate taken in satisfaction of debts due Wm. B. Bowie to amt. of | 3,082.20 |
| Error in statement | 229.22 |
| Amounts loaned to her children at different times since Wm. B. Bowie's death | 8,615.35 |
| Cash unaccounted for | 1,125.15 |
| Making total | $34,948.90 |

That the amounts loaned to her children are evidenced by notes, receipts and due bills, only one of which is taken by her or to her as executrix.

Without acting on the account of the appellant, which was submitted to the Court for its action under section 11 of Art. 93 of the Code, or making any ascertainment of what part of the estate was administered and what was not, the Court, on the 3rd of March, 1891, passed the following order : "This Court decides that section 72, of Article ninety-three of the Code of Public General Laws, is mandatory on them, and therefore orders that John A. Baker, executor of Ann H. Bowie, deceased, executrix of Wm. B. Bowie, deceased, deliver over to said R. Irving Bowie, administrator *d. b. n. c. t. a.* of Wm. B. Bowie, deceased, all the bonds, notes, accounts, and evidences of debt which the said Ann H. Bowie deceased, executrix of Wm. B. Bowie, deceased, may,

have taken, received, or had as such executrix at the time of her death, and also to pay over to him the money in her hands as such at the time of her death, on or before the twenty-first day of April next. The terms, bonds, notes, accounts, and evidences of debt to embrace as well the original assets of the estate of Wm. B. Bowie, deceased, as bonds, notes, &c., &c., taken by said Ann H. Bowie, executrix, in lieu of and to secure such original assets; and the term money to embrace as well any money existing at the time of William B. Bowie's death as that which was collected by the said Ann H. Bowie, executrix, from the original assets of her decedent's estate, less payments made by her of debts and legacies."

From this order appeal was taken, except so much thereof as directed the appellant "to deliver to the administrator *d. b. n. c. t. a.* of Wm. B. Bowie, deceased, all bonds, notes, accounts, and evidences of debt which remained in the hands of his decedent at the time of her death, and which were part of the original estate of Wm. B. Bowie."

In the language of the Court in *Gardner and Hughes, Ex'rs vs. Simmes, &c.*, 1 *Gill*, 429, "the Orphans' Court seems to have totally mistaken the whole scope and purpose of the Acts of Assembly in regard to their authority in this respect." Section 72 of Art. 93 of the Code referred to by them in their order, does give them authority to act in the premises; but, construed with reference to other provisions of the Code and in accordance with the decisions of this Court upon the subject, it is clear that they have misconceived and transcended their duty in this case. The Act of 1820, chapter 174, (which amended the Act of 1798, which first gave the authority), in its third section uses the word "authorized," and by the Code of 1860 this was changed into the word *"shall;"* but this Court, in dealing with the section as found in the Code of 1860, in *Donaldson's Ex'rs vs. Raborg's*

*Adm'x d. b. n.,* 26 *Md.*, 324, said, that section 72 of
Article 93 of the Code contained the *same provisions* as
section 3 of the Act of 1820, chapter 174, and must
receive the *same construction* as the Act of 1820. That Act
has frequently been the subject of consideration and con-
struction. In *West vs. Chappell,* 5 *Gill,* 229, Chief
Judge ARCHER, speaking for the Court, said that "the
Act, in authorizing the Orphans' Court to pass an order
for the delivery over to the administrator *de bonis non* of
the property therein described, impliedly clothed that
Court with authority, as preliminary to such order, to
inquire into the fact whether the property was adminis-
tered or unadministered." He adds that the Act is
"founded on the idea that the property may be unad-
ministered property, but it does not treat it absolutely
as such." Any other interpretation than this, Judge
ARCHER proceeds to say, would, "in many cases, work
the greatest injustice;" for although he might, in fact,
have closed his accounts and distributed the assets, his
estate might be made to surrender all evidences of debt,
taken by him in the course of his administration, which
at his death might have been on hand. "A construction
which might lead to such results," the Court said,
"could not be sanctioned." As was said by this Court
in *Stewart and Duffy vs. Firemen's Ins. Co.,* 53 *Md.*, 571,
"To the administrator *de bonis non* is committed only the
administration of the goods, chattels, and credits of the
deceased which *remain in specie,* and have *not already
been administered.*" To ascertain what has been admin-
istered, where the administrator or executor has died
without passing an account, and closing the estate, sec-
tion 11 of Article 93 of the Code, provides a method.
It provides as follows: "The administrator of a deceased
administrator, who shall die before an account of his
administration hath been rendered, shall render an
account showing the amount of assets received, and the

payments made by his decedent; and the account shall, if found correct, be admitted to record as other administration accounts.''

What the executor, passing an account under this section, may do has been explicitly settled by this Court. In *Donaldson's Adm'r vs. Raborg's Adm'x d. b. n.*, 28 *Md.*, 55, the Court by Judge MILLER says ''the executor is in the same position as the deceased executor would be if living and offering to pass an additional account; and it is the practice in stating a subsequent account to claim and have allowed payments not credited in the previous one though made prior to its passage.'' In that case the payments claimed to be allowed had been made to *distributees*, and the Court said ''there is the stronger reason for their allowance, because there is nothing in our testamentary system expressly directing a distribution account in all cases *to be stated; or distribution to be made in the Orphans' Court*, or under its direction.'' Distribution by an executor or administrator is *his act*, and is *in pais.* . This has frequently been decided in this State. If he can not satisfy the parties, he *may give notice* and invoke the Court's aid, and protect himself through the Court; and make it a matter of record. This is stated in the case from which we last quoted.

What shall be regarded as administered, and what not, this Court, in *Stewart and Duffy vs. Firemen's Ins. Co.* (already quoted from) has clearly stated. Speaking of the administrator *de bonis non*, the Court says: ''Our statute limits his authority to the administration of such assets as have *not* been converted into money, and not distributed and delivered, or retained by the executor of the former administrator, under the direction of the Orphans' Court. In view of this law, and the source from which it was borrowed, money received by the administrator and mingled with his own, or other assets sold, wasted, or misapplied, or converted to his own use

are regarded, so far as the rights and power of the administrator *de bonis non* are concerned, as already administered; and hence he acquired no title to such assets, and has no authority to bring an action against any one for their recovery."

Looking to the special facts of this case and applying the rules to which we have adverted, we have no difficulty in deciding what the Orphans' Court ought to have done.

Mrs. Bowie was the executrix of her husband's will. She accepted the trust, and the *title* to the estate to be administered vested in her. The testator gave five thousand dollars to a daughter, and the residue of the estate he gave to his wife. She did not renounce the will, but accepted the office, and qualified as executrix, thus giving an unqualified assent to the provisions of the will. She paid the debts which the testator owed, and discharged the legacy. She collected some of the debts due the testator, and some of the money thus collected she loaned out, and took obligations, or evidences of debt to herself for the same. For some of the mortgages due the testator she took deeds to herself for the mortgaged property, thus discharging the mortgagors and the mortgages, and getting absolute title in herself to the property which had been mortgaged to her husband. In all this she gave unmistakable evidence that she was dealing with the estate as her own, and thought it *was* her own. Wherever she took title to herself for mortgaged property, the mortgage was discharged; and being real estate there no longer remained any possible way of treating that as still a part of the personal estate of the testator. If there were creditors of the estate who could not be satisfied in any other way, a Court of equity, on application to it, might hold her a trustee for the benefit of the creditors, and pay them by a sale of the property; but in no case could the administrator *de*

*bonis non* acquire any control of the property. There are no creditors in this case to complain. If there be any who are unpaid, their claims, in the aggregate, are so inconsiderable in comparison with the amount of the estate which will pass into the hands of the administrator *de bonis non,* that there is no need to consider them or their rights in deciding the questions presented. In all her dealings with the estate it is apparent that she regarded the residue of it as her own, and dealt with it accordingly. As to some of it, she had not done what was necessary to *complete* her title; and that will have to go into the hands of the administrator *de bonis non,* only, however, to come back to her estate by distribution, under the will of her husband, after such allowance for fees and commissions, and any debts actually remaining unpaid, and paid by the administrator *de bonis non.* As to what she had collected and reduced into possession, and exercised rights of property over, that ought to be treated as retained by her as her own under the will, and as a part payment of the residue given to her by the will. If the whole estate had been converted into money and the time for passing an account being passed, according to the ruling in *Gardner and Hughes, Ex'rs vs. Simmes, &c.,* 1 *Gill,* 428, and *Lark, et al. vs. Linstead and Heath,* 2 *Md.,* 427, the law would assume, as to legacies given the executor, that the executor held as legatee then, and not as executor. This is the legal presumption; for not being bound to make a record of distribution, it being an act *in pais,* the presumption is made that the executor has retained as legatee as he has a right to do. Had Mrs. Bowie passed an account, the whole estate would have been credited to her to balance her account, as going to her as legatee. This would have been operative as well on the bonds and notes remaining uncollected as on that part of the estate which had been collected. But she did not pass her account; and her executor in

passing his account for her, and standing in her stead, certainly was entitled, under the circumstances, to treat all the collections and investments by her as payments to herself as legatee.    Her conduct, in respect to the estate, is aided by the presumption to which we have already alluded; and we think the statement of the account by the appellant is on the proper theory, and if the Orphans' Court shall find that account truthful in fact, it ought to be approved; and their order should only direct the bonds, notes, and evidences of debt which had not been collected, and not put *in her name* to be passed over to the administrator *d. b. n.*    Whenever she had changed the form of the debt, no matter if she had added the word executrix to her name, we do not think in her case the order should include such debts, but should only be confined to those remaining as when she took them as executrix.    Acting for her, and on her behalf, under the 11th section of Article 93, we think, that the appellant did nothing more than was allowed in *Raborg's Case* (28 *Md.*, 55).    He only did what she might have done had she been passing the account, and nothing more; and that is what the law designed him to do under the 11th section of Article 93.    It would certainly be wrong to subject the estate to diminution for fees and commissions for doing a needless thing; for it all would have to come back to the appellant by distribution, and then be subjected to his commissions for administering and distributing under Mrs. Bowie's will. It needed no such action to perfect appellant's title to what Mrs. Bowie *had administered.*    It follows, from all we have said, that we think that the Orphans' Court not only acted prematurely in not first passing upon the correctness of the appellant's account, tendered under the 11th section of Article 93, but that it also erroneously directed the surrender to the appellee as administrator *d. b. n. c. t. a.* of William B. Bowie, of that part of the

estate which Mrs. Bowie had collected and administered. The order appealed from must therefore be reversed, and the cause will be remanded to the Orphans' Court to the end that it may pass upon the correctness of the appellant's account, in the light of what we have said about it, viz., that if accurately stated the principle on which it proceeds is right; and when that is done to pass an order directing the appellant to turn over to the appellee such parts of the estate of Wm. B. Bowie, as remain unchanged as part of the original estate of Wm. B. Bowie, which came to the hands of his executrix.

*Order reversed, with costs, and*
*cause remanded.*

(Decided 17th June, 1891.)