## WM. ROLLINS WEBB ET AL. *vs.* ROBERT P. WEBB ET AL.

*Time of Vesting and Payment of Legacy—Interest on Legacy Payable in Futuro—Testator in Loco Parentis to Legatee—Property Held in Trust by Executors.*

When a testator stood *in loco parentis* to a legatee, and the latter is otherwise unprovided for, interest will be allowed upon the legacy from the death of the testator, notwithstanding the fact that a future time is fixed for its payment.

Evidence of an intention on the part of a testator to stand *in loco parentis* to his legatee may be found upon the face of a will from the nature of its provisions, or in the conduct of the testator and in the circumstances surrounding him and the beneficiary.

A testator bequeathed to his three grandsons, infant children of a deceased son, certain property, "to be given to my grandsons, or to the survivors or survivor of them, at such times as my executors may find convenient and in accordance with their best judgment, but in no case before they or either of them shall have reached the age of twenty-one years, to whom (or to the survivors or survivor of them), I also desire my executors to give under the above limitation as to age and time, the sum of $5,000 each." During his lifetime the testator had contributed a weekly sum towards the support of the grandsons, who were in destitute circumstances. After his death, the guardian of the legatees

filed a bill praying that the legacies might be treated as trust funds in the hands of the executors, and that the Court would assume jurisdiction of the trust. An order was passed by consent, describing the executors as trustees and directing them to pay to the guardian of the legatees a certain sum monthly, to be a charge and credit upon the legacies, and the executors filed a bond as trustees. Upon petition of counsel for the guardian asking for the allowance of a fee for their services, an order was passed directing payment of the same out of the income of the funds in the hands of the executors. Upon appeal therefrom, *held*,

1st. That the legacies given by the testator to his grandsons were vested, and the expression "survivors or survivor of them," used in the bequest, is to be referred to the time of the death of the testator, and does not operate to postpone the time of vesting.

2nd. That the testator stood *in loco parentis* to the grandsons, who are otherwise unprovided for, and that consequently they are entitled to interest on the pecuniary legacies from the time of testator's death and to the income of the property specifically bequeathed.

3rd. That since the executors had assented to the order of Court directing them to hold the legacies as trustees, they cannot now claim to act as executors, and the order appealed against was properly passed.

A testatrix bequeathed "to each of my grandsons, the sons of my dedeceased son G., who may live to reach the age of twenty-one years, the sum of $1,000." *Held*, that these legacies are contingent, being given upon the plain condition that each legatee should arrive at the designated age before being entitled to take, and they do not begin to bear interest before the happening of the condition.

Appeal from an order of the Circuit Court of Baltimore City (WICKES, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*C. C. Rhodes* (with whom was *Frank V. Rhodes* on the brief), for the appellant:

It is true that in some cases where the will is silent as to interest, it will be presumed that a parent, or one in *loco parentis*, intended that a legacy should bear interest, but we think that no case can be found where interest has ever been allowed where the bequest was like the one in this case. These legacies are not vested. They are contingent on each reaching the age of twenty-one. *Perry on Trusts*, 622; *Leake* v.

*Robinson,* 2 Merivale 384; *Von Der Horst* v. *Von Der Horst,* 88 Md. 129. In *Leake* v. *Robinson* it is said: "In some instances the testator directs the payment to such child or children as may reach the age of twenty-five years. On others the payment is to be made upon the attainment of the age of twenty-five years. In the residuary clause it is from and immediately after each child or children shall attain the age of twenty-five, that the trustees are to transfer the property. But I think the testator in each instance means precisely the same thing, and that none were to take a vested interest before the specified period. The attainment of twenty-five years is necessary to entitle any child to claim a transfer. It is not the enjoyment that is postponed. The direction to pay is the gift and that gift is only to attach to children that shall attain the age of twenty-five."

Interest is never allowed where a specific sum certain is to be paid to the infant when it becomes twenty-one years. Without direction that the income shall be applied to the infant the interest goes unto the residue, the income from real estate goes to the heirs at law. *Perry on Trusts,* 622; *Leake* v. *Robinson,* 2 Merivale 384. The question of interest is *res adjudicata.* In the bill filed in the case, plaintiffs prayed the Court to take jurisdiction of the legacies and have them invested for the benefit of the infants.

Appellants denied the right of the Court to have said funds invested for the benefit of the infants, and the right of the infants to any interest on said legacies, or to the payment of any part of the principal for maintenance except such as the executors were willing to advance, but consented to advance $32.50 per month, and claimed interest for themselves for any advancement they should make out of the principal. Decree was passed on June, 23, 1899, sustaining every contention of appellants. That decree was never appealed from, has never been stricken out, and is now enrolled. The order of March 26, 1900, is inconsistent with, and in direct conflict with, the decree of June 23, 1899 The appellants prayed an allowance of a fee out of the principal of the legacies, that petition only

was argued and the Court should not have passed the order
directing the payment of the fee out of the income, that ques-
tion never having been before the Honorable Judge who
passed the order.   The filing of the bond in the case on July
19th, does not change the terms of the will, nor the rights of
appellants thereunder, nor give the Court the authority to pass
the order of March 26th.

There is nothing in the will to show that either of the
grandparents were in *loco parentis*, and no testimony was ever
taken to show it.   The single fact of a grandfather giving
three grandchildren five dollars a week will not establish the fact.
The children never lived with him but with an aunt, who took
charge of, and was, and is still rearing them, and the small
sum of five dollars a week would not indicate that he meant
to assume the relation of parent to them.   In addition to the
above the change made in the will by the codicil reducing the
amounts of each legacy, and in the character of the bequests
for reasons best known to himself, all tend to show that the
grandfather meant to do just what he said in the codicil, that
the executors were to pay to each one the sum of five thousand
dollars at such times and in such amounts as might be con-
venient to the executors, but not before the age of twenty-one
years, and only to such as should reach that age, and no more.

*Frank Gosnell* (with whom was *James W. McElroy* on the
brief), for the appellee :

It cannot be successfully controverted that the Circuit Court
of Baltimore City, by the passage of its order of the 23rd of
June, 1899, followed by the filing of the bond by the appel-
lants on the 19th of July, 1899, obtained complete control and
jurisdiction, not only over the legacies in question, but over
the appellants as well.  Particular attention is called to the fact
that the condition of the bond is that the appellants not only
shall well and faithfully perform the trust reposed in them by
the wills respecting these legacies, *but that might be reposed in*
*them by any order or decree passed in the cause*.   Whilst the
jurisdiction of the Court was denied in the answers filed by

the appellants to the original bill of complaint, not only was there no appeal taken from the order of June 23, 1899, but on the contrary that order was in term asssented to by the parties. Moreover, the appellants subsequently submitted to the jurisdiction by filing their bond in this cause.    It is, therefore, too late for them now to make objection to the jurisdiction. *Code*, article 5, section 35; *Biddinger* v. *Wiland*, 67 Md. 363.

The legacies in question are vested legacies, but defeasible upon the happening of a condition, namely, the death of the infants under age. *Von der Horst* v. *Von der Horst*, 88 Md. 127. But, inasmuch as the testator stood in *loco parentis* towards the legatees, the legacies bear interest from his death. That the grandfather "assumed the parental character and discharged parental duties," is beyond doubt, for the admissions in the answer of the appellants, and the uncontradicted evidence show that the father of the infants died before the testator, leaving no estate whatever, and that the only means of support of the infants was the $5 a week allowed them by their grandfather.    Parol evidence is admissible to show that the relation existed.    88 Md., 130, 131.

If the interest upon the legacies does not pass as incident thereto, what is to become of it?    There is no direction that it be retained or invested by the executors or trustees, or accumulated and added to the *corpus*, nor is there any separate disposition of it to be found in any part of the will.    By the will of the grandfather, all his estate is given to his two sons, " excepting only" that portion thereof given thereby to the infants.    The testator was clearly disposing of his *whole estate* and as he knew that his grandchildren were in abject poverty, and solely dependent upon him, it is reasonable to suppose that he was creating a fund for their support.    He surely could not have meant to give to his two sons, who were of age, and capable of taking care of themselves, all of his property "with the exception" of the legacies to his grandchildren, and notwithstanding such express *exception* have meant that the income on those legacies until the infants reached their majority should also go to his sons.    Having provided amply for his

two sons, who were also his executors, and as such entitled to commissions for settling his estate, it is but fair to presume that the income from the legacies to his grandchildren, who were absolutely dependent upon him during his lifetime, should be applied after his death to their maintenance during minority. *Rogers v. Soutten*, 2 Keen, 598; *In re Moody* (1895), 1 Ch. 101; *Tierney v. Tierney* (1899), 2 Ch. 739.

Should we be wrong in our contention that the testator was in *loco parentis* towards his grandchildren, still the infants will be entitled to one-third of the income derived from their legacies for this reason. What the sons take by the terms of the will is the estate of the testator "excepting only;" then follows certain specific property and $5,000 to each of his grandchildren. It is clear by the terms of the will that the sons were not to take thereunder any part of the property which followed the words "excepting only." Now, if the testator did not intend that the infants should have the income from the property so given to them, he certainly did not intend to give it to his two sons, therefore as to such income there is an intestacy, and the infants as heirs at law and next of kin would take their father's share, namely, one-third thereof.

SCHMUCKER, J., delivered the opinion of the Court:

This is an appeal from an order allowing a counsel fee out of the income from certain legacies held by the appellants in trust for the infant appellees. The reasonableness of the amount of the fee is admitted, but the appellants deny that they have any funds out of which to pay it, and thus raise for determination the main issue in the case which is, from what time do the legacies bear interest?

William P. Webb, the grandfather of the infant appellees, who are the children of his deceased son, George P. Webb, in his will gave to his two sons, William R. and Armstead M., all of his estate of every kind other than that described in the following clause, *i. e.*, "excepting only the ten shares of the stock of the Lorraine Cemetery Company, of Baltimore City, and the ten lots in the said cemetery which were formerly the

property of my deceased son, George Prescott Webb, and which became mine upon the death of my sister, Eliza Ann Webb, to whom they had been transferred, to my grandsons, or the survivors or survivor of them, the sons of my deceased son, George Prescott Webb, to whom, or to the survivors or survivor of them. I also desire my executors hereinafter named to give at such time or times as they may find convenient and—accordance with their best judgment not earlier, however, than they or either of them shall reach the age of twenty-one years, the sum of ten thousand dollars each.'' The two living sons, William R. and Armstead M., who are the appellants, were named as executors in the will.

The testator, by a codicil to his will, provided as follows: ''Whereas, in said will, in the clauses succeeding the one beginning 'and excepting only, &c.,' '' there is an omission that renders said clauses ambiguous, and it is my purpose and intention by this codicil to correct said ambiguity and also to make certain other changes in my will aforesaid:

''Now, therefore, I will and bequeath as follows: That the ten (10) shares of the stock of the Lorraine Cemetery Company, of Baltimore City, and the ten (10) lots in the said cemetery, formerly the property of my deceased son, George Prescott Webb, which became mine on the death of my sister, Eliza Ann Webb, to whom they had been transferred, be given to my grandsons (or to the survivors or survivor of them), the sons of my deceased son, George Prescott Webb, at such time or time as my executors hereinbefore named may find convenient, and in accordance with their best judgment, but in no case before they or either of them shall have reached the age of twenty-one years; to whom (or to the survivors or survivor of them.)

''I also desire my executors to give, under the above limitations as to age and time or times, the sum of five thousand dollars ($5,000.00) each.''

The testator's widow, Anna Eliza Webb, by her will made provision for the appellees as follows:

''After the payment of all my just debts and funeral expenses.    *    *    *

"I give, devise and bequeath to each of my grandsons, the sons of my deceased son, George Prescott Webb, who may live to reach the age of twenty-one years, the sum of one thousand dollars; I give, devise, grant and bequeath all the residue of my estate, real, personal and mixed of every description and wherever situated to my two sons, the Reverend William Rollins Webb and Armstead Moore Webb, or the survivor of them, absolutely." She also made the appellants her executors.

Wm. P. Webb died on December 23, 1895, and his wife died on November 22, 1898. The wills of both were admitted to probate and the appellants qualified as executors of each will.

The equitable appellees were infants of tender years at the death of their father, George Prescott Webb, who left them entirely without means of support. They were taken to the residence of their aunt, the legal appellee, who is a seamstress, depending upon her own labor for her maintenance. The grandfather, Wm. P. Webb, paid to the aunt the weekly sum of five dollars as long as he lived for the board, or toward the support of the infant orphans. After his death, his wife continued to make the same weekly payment until she died, and after that the appellants made the weekly payment for account of the legacies until the institution of this suit.

The bill of complaint was filed by the appellees, who are still infants, by their aunt, who had been appointed their guardian, setting forth the facts already stated, and averring that the appellants had ample assets to pay the legacies of both wills in full. It prayed that the legacies under each will to the appellees might be treated as trust funds in the hands of the appellants, and that the Court would assume jurisdiction of the trusts and supervise their administration for the support and education of the appellees, and for general relief.

The appellants did not assume a hostile attitude to the proceeding nor object to the joinder of the two trusts in one case, which had been made for the purpose of economy. They answered the bill admitting most of its allegations of fact in-

cluding the possession by them of assets sufficient to pay the legacies, and expressing their willingness to pass over the amount of the legacies from themselves as executors to themselves as testamentary trustees, and to give bond for the faithful performance of the trusts of the two wills pertaining to the respective legacies. They, however, in their answer contended that the appellees were not entitled to any interest on their lagacies until after they reached twenty-one years of age, and that in case of the death of either of them before arriving at that age, his legacy would lapse into the estate of the testator.

After testimony had been taken establishing the facts of the case, an order of Court was passed by consent on June 23, 1899, describing the appellants as trustees, having in charge the legacies devised to the infant appellees and directing them to, pay to the guardian of the appellees the monthly sum of $32.50, until the further order of the Court in the premises, and providing that such payments as well as the like payments theretofore made "be a charge and credit upon the respective legacies." The appellants then filed a duly approved bond for the faithful discharge of the trust reposed in them respecting the legacies to the appellees under the wills of their grandfather and grandmother, or by the order already passed or such orders or decrees as might be thereafter passed in the case. The Court did not by its order formally assume jurisdiction of the trusts of the wills in respect to the legacies to the appellees, or direct them to be thereafter executed under its supervision, but that was the practical result of the order, as it gave directions in reference to the performance of the trusts, and declared that the order should be operative only until the further order of the Court, thus plainly indicating a purpose to retain the bill for further action thereon. The appellants were not designated trustees in either of the wills, but the duties imposed upon them in reference to the custody of of the legacies for an indefinite period were more appropriate to the office of trustee than that of executor, and they by their answer filed in this case, expressed their willingness to

turn over the legacies from themselves as executors to them-
selves as trustees, and give bond in the latter capacity, which
they have since done, and the order of Court of June 23, 1899,
passed with their assent, treated and described them as trus-
tees.    They cannot now retrace their steps and elect to act as
executors.    *State* v. *Cheston*, 51 Md. 352.

About three months after the date of the order last re-
ferred to, the appellees filed a petition in the case asking for
an accounting under the Court's direction of the moneys paid
to them or for their account or benefit by the appellants since
the deaths of the testator and testatrix.    Upon this petition
an order was passed referring the case to the auditor to state
an account.    After the case went to the auditor the counsel
for the appellees filed a petition asking to be allowed a coun-
sel fee for their professional services in the case.    Annexed to
this petition was the certificate of several reputable members
of the bar, suggesting $250 as a fair and reasonable fee.    An
*ex-parte* order was passed by the Court, allowing the fee as
prayed.    The appellants then filed two successive petitions in
which they prayed that the order referring the case to the au-
ditor to state an account, and also the order allowing the
counsel fee, might be vacated, because the order of June 23,
1899, was an adjudication of the matters at issue between the
parties, and that the petitioners had no estate in their hands
that was being administered under the direction of the Court,
and that therefore the Court had no jurisdiction to pass the
orders.

The parties were then heard in argument by the Court
which passed the order appealed from, determining that the
legacies to the appellees were in the hands of the appellants
as trustees, and that the petitioning counsel were entitled to
compensation for their professional services and fixing the fee
at $250, the reasonableness of that amount not being objected
to by counsel for the trustees, and directing it to be paid out
of the income of the trust estate.

The order appealed from did not in terms pass upon the
position asserted by the appellants, that the order of June 23,

1899, was a final adjudication of the matters at issue between the parties, but it is evident from the face of the order of June 23rd, that it was not intended to be final, as it was by its own terms to be operative only until the further order of the Court. The case is still open for the determination of the issues raised by the bill of complaint, which contained a distinct prayer that the Court would assume jurisdiction over the legacies as a trust fund and supervise and direct the administration of the trust. All questions arising incidentally to such administration may be heard and determined in this proceeding.

We think that the devise and legacies given to the equitable appellees by the will of their grandfather were vested, and that the direction as to the time of their payment related to the enjoyment and not to the vesting. This Court has in a long line of decisions announced and reiterated the doctrine that the law favors the early vesting of estates. Even in the case of devises and legacies in remainder, of which the devisee or legatee does not come into possession until after the expiration of a life estate, it has uniformly been held that the postponement of the time of enjoyment will not defer the vesting of the gift which will be held to be vested whenever it can fairly be done without doing violence to the language of the will. *Spence* v. *Robins*, 6 G. & J. 507; *Lark* v. *Linstead*, 2 Md. 420; *Tayloe* v. *Mosher*, 29 Md. 443; *Fairfax* v. *Brown*, 60 Md. 50; *Crisp* v. *Crisp*, 61 Md. 149; *Von der Horst* v. *Von der Horst*, 88 Md. 129, 130. "The general rule is, that any devise or bequest to a person or persons *in esse*, unless there be some clearly expressed desire or manifest reason for suspending or deferring the time of vesting, confers an immediately vested interest, although the time of enjoyment may be postponed." *Dulaney* v. *Middleton*, 72 Md. 75.

In the case before us, the devise and legacy are made directly to persons *in esse* named in the will, without the intervention of any intermediate estate. It is true the executors are directed to pay over the legacies at such times as they may find convenient and in accordance with their best judgment and not

before the legatees shall have reached the age of twenty-one years ; but these directions relate merely to the time of enjoyment and are not of the substance of the gift. The expression, "the survivors or survivor of them," used in connection with the gift to the grandchildren, is in our judgment to be referred to the date of the death of the testator, as their presence in the will in the connection in which they are used does not manifest anything like a clear intention on the part of the testator to postpone the time of vesting of his gifts to his grandchildren.

Ordinarily, a legacy bears interest only from the time at which it is by the terms of the will made payable, but it is well settled that where the testator stands *in loco parentis* to the legatee, and the latter is otherwise unprovided for, interest will be allowed upon the legacy from the death of the testator, notwithstanding the fact that a future time is fixed for its payment. *Budd* v. *Garrison*, 45 Md. 420 ; *Von der Horst's case, supra.*

One who stands *in loco parentis* is defined by this Court in *Von der Horst's case* as a person, "who means to put himself in the situation of the lawful father of the child with reference to the father's office and duty of making provision for the child." Evidence of the intention on the part of a testator to stand in this relation to his legatee may be found upon the face of the will, from the nature of its provisions, or in the conduct of the testator and in the circumstances surrounding him and the beneficiary. *Von der Horst* v. *Von der Horst, supra*, and cases there cited.

In *Rogers* v. *Soutten*, 2 Keen, 598, a testator in his lifetime voluntarily became bound to the parish for the support of an illegitimate child of his son and made weekly payments of three shillings for that purpose, with a few exceptions, as long as he lived. It was held by LANGDALE, Master of the Rolls, that the testator had placed himself *in loco parentis* to his grandchild, and that interest was payable from his death on a legacy given by him to the child, although by the terms of his will the legacy was made payable on the child's attaining twenty-one years of age.

In the present case the legatees had for some time prior to the testator's death been infant orphans of tender years and absolutely without means of support.   They were, as we have already said, taken charge of by an aunt who is a single woman, earning her living by sewing, and the testator paid to her five dollars per week for their board or for the expense of their maintenance.   The aunt testified that this weekly sum, together with occasional gifts of clothing and a donation of $30, constituted the sole income or means of support of the legatees until recently, when some of them have at times been able to earn small wages.   The weekly sum paid by the testator for the board or support of his legatees, who were his infant grandchildren, was not a large one, but in view of his blood relation to them and the fact that they were without other support, we are justified in reaching the conclusion from his conduct and the surrounding circumstances that he intended to put himself *in loco parentis* to them.   Such being the case, it follows that the appellees are entitled to interest on their pecuniary legacies from the death of the testator, and upon the same ground are entitled to the income, if any, produced since the death by the property specifically bequeathed to them.

The legacies of $1,000 each, given to the appellees by the will of their grandmother, are of a different character.   They were given "to each of my (her) grandsons, the sons of my deceased son, George Prescott Webb, who may live to reach the age of twenty-one years."   These legacies were given upon the plain condition that each legatee must arrive at a given age to entitle him to take at all, and they are, therefore, not vested but contingent legacies, and do not begin to bear interest until the title to them vests by the happening of the condition upon which they are predicated.

It follows from what we have said that the order appealed from must be affirmed and the case remanded for the further administration of the trusts of the legacies under the supervision of the Circuit Court.

*Order affirmed and cause remanded.*

(Decided December 7, 1900.)